UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

THEODORE R. VEALE            )
DOROTHY J. VEALE,           )
                            )
        Plaintiffs,         )
                            )
v.                          )Civil No. 1:05-CV-11526-GAO
                            )
UNITED STATES OF AMERICA, et al.,  )
                            )
        Defendants.         )

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT AND FOR PROTECTIVE ORDER**

The United States of America, by its attorney,

Michael J. Sullivan, United States Attorney for the District of

Massachusetts, moves this Court to issue an order dismissing the

*pro se* Plaintiffs Theodore and Dorothy Veale's ("Veales") Amended

Complaint and requiring the Veales and their sons, David and

Scott Veale, to obtain leave of court before filing any further

complaints.

## I.  Introduction

The Veales's Amended Complaint alleges civil rights

violations and tort claims. Besides monetary damages, the Veales

seek injunctive and declaratory relief as well as a writ of

mandamus.  The Veales's Amended Complaint is substantially the

same as the complaints David Veale, the Veales's son, filed in

the United States District Court for the District of New

Hampshire ("New Hampshire District Court") in 1990 and 1998, and

in the United States District Court for the District of Vermont

("Vermont District Court") in May 2005.[1]  *See* Vermont District Court Complaint attached as Exhibit A; *See also* New Hampshire District Court Complaint attached as Exhibit B.  The New Hampshire and Vermont District Courts dismissed all cases with prejudice.  *See* September 1, 1999 Order attached as Exhibit C; *See also* February 27, 2006 Order attached as Exhibit D.[2] Significantly, the New Hampshire District Court and Vermont District Court issued protective orders in September 1999 and February 2006, respectively, requiring the Veales to first seek leave from that court before David or Scott Veale could  file a complaint alleging the same allegations and claims contained in the Amended Complaint filed with this court.  *See* Exhibit C at 13; *See also* Exhibit D at 21. The New Hampshire District Court issued a decision on the merits denying David Veale's claims on September 1, 1999, and such decision was affirmed by the First Circuit Court of Appeals in October 2000.[3]  *See* Exhibit C; *Veale v. United States,* 230 F.3d 1347 (1st Cir. 2000) (unpublished

---

[1]Scott Veale, the Veales's other son, was a named plaintiff in the New Hampshire cases, but not in the Vermont case, where David Veale was the sole plaintiff.

[2]The United States refers to and incorporates by reference the Vermont and New Hampshire District Courts' opinions and orders into its reasons for dismissing the Veales's Amended Complaint.

[3] With the exception of certain state law claims over which the New Hampshire District Court declined to exercise supplemental jurisdiction, all claims were dismissed with prejudice.

table decision) *cert. denied*, 532 U.S. 1049 (2001), attached as
Exhibit E.

"To say [the Veales] are veteran pro se litigants does them
the disservice of understating their preoccupation . . . ."
Exhibit C at 1.  Members of the Veale family has initiated or
"been party to some 89 separate cases in state and federal court
from 1982 through [November, 1998].  Virtually all of these cases
concern, or arise from, or are said to relate to [the Veales']
unswerving belief that a vast and all- encompassing conspiracy
exists . . . ."  Exhibit D at 1 n.1; Exhibit C at 2.  The Vermont
case would bring the number of cases filed in this matter to 90
and the instant case makes it 91.

The Veales's Amended Complaint filed with this court is a
transparent attempt to re-litigate the issues already decided
against their sons, David and Scott, and, therefore, is subject
to dismissal on the grounds of res judicata and collateral
estoppel.  Moreover, the Veales cannot obtain subject matter
jurisdiction in this Court for either the civil rights or tort
claims alleging constitutional violations.  The Veales are not
entitled to judgment in their favor, and the instant Amended
Complaint should be dismissed pursuant to Fed. R. Civ. P.
12(b)(1) and (b)(6).

The complaints dismissed by the New Hampshire and Vermont
District Courts, as well as the Amended Complaint filed in this

3

case, repeatedly alleged a "fantastic and conclusory" conspiracy of local, state, and federal authorities that purportedly exists to deprive him of property in violation of his constitutional rights.  *See* Exhibit C at 3.  For example, the complaints filed in Vermont, New Hampshire, and with this court contain similar preliminary statements and counts.  The only difference between the New Hampshire and Vermont complaints and the Amended Complaint filed with this court is David Veale's parents stand in his shoes as plaintiffs.  Simply stated, the Veales are virtual representatives of David Veale.[4]  The alleged constitutional violations at the heart of the Veales's civil rights claims cannot be made against the United States.  They also do not fall within the purview of the Federal Tort Claims Act ("FTCA"), or otherwise comply with the jurisdictional requirements of the Act.  Thus, this Court should dismiss with prejudice their claims against the United States.

## II. PERTINENT FACTUAL BACKGROUND

The Veales's Amended Complaint is styled as a civil rights action and torts claim based on alleged constitutional violations.  *See* Compl. ¶ 5.  The federal defendants named are the United States, United States Attorney General, U.S.

---

[4]"The sobriquet 'virtual representation' frequently is used to describe this type of de facto representation.  It fits equally well under the label 'representation by proxy.'" *Gonzalez v. Banco Central Corp.*, 27 F.3d 751, 758 n.5 (1st Cir. 1994).

Department of Justice, United States Attorney for the District of
New Hampshire, and the United States Bankruptcy Court for the
District of New Hampshire.  In a section entitled "Parties,"
however, the Veales refer to "federal justice department
officials and court officials involved with the investigation and
processing of plaintiffs' prior complaints involving *this*, and
other civil rights violations."  Compl. ¶ 3 (emphasis added).
Adding little to this description, the Veales state that
"additional other known and unknown defendants include the United
States District Court and Justice Departments and Officials
involved for the District of [New Hampshire]."  Compl. ¶ 4.  They
further assert that the federal defendant is sued "individually
and in its official capacity as the United States."  Compl. ¶ 3.
As reflected on the Docket Sheet, however, the Veales have not
named or served any federal employee individually.  The Veales
seek injunctive relief and money damages.  Compl. at Request for
Relief, ¶¶ A-E.

The instant Amended Complaint identifies five causes of
action:  (1) violation of his constitutional rights under 42
U.S.C. §§ 1983, 1985(3), and 1986; (2) intentional torts,
including "fraudulent concealment, theft, trespass, false
imprisonment, false arrest, malicious prosecution, official
oppression, abuse of office, and conspiracy to defame plaintiffs,
and their family, by malicious criminal and civil prosecution;"

5

(3) negligence, fraud, and conspiracy; (4) violation of New Hampshire Constitution; and (5) "Federal Tort Claim And Request for Mandamus." The essence of their claims against the United States is that the:

> United States and others named, through its'[sic] N.H. Federal Courts and Justice Departments, became aware of this wrongful and unlawful conspiracy to deny plaintiffs their property rights in N.H. without due process or equal protection, and to deny them equal access to the courts by a jury trial for redress in any case for their grievances, and to a proper investigation and prosecution of these ongoing crimes, and in breaching their duties owed to the plaintiffs, they perpetrated, instigated, and condoned the foregoing pattern of events leading up to the alleged civil right [sic] violations involving plaintiffs' property located in Marlborough, NH, and their two sons, Scott and David Veale, in a means to further carry out the object of this conspiracy and fraudulently conceal plaintiffs' various claims against the defendants.

Compl. ¶ 10. Furthermore, the Veales refer to a July 1999 Federal Tort Claim relating to these identical claims and issues raised herein. Compl. at ¶ 8, Exhibit 1.

The Veales's Amended Complaint asserts the same factual assertions and claims that the Veales's son raised in his Complaints filed with the New Hampshire and Vermont District Courts.[5] *See* Amended Complaint filed in New Hampshire District Court, attached at Exhibit A, at ¶¶ 1, 3, 7 and Count I (constitutional violations under §§ 1983, 1985(3), and 1986 by

---

[5] As noted *infra*, the Court may take judicial notice of the Complaints and the Courts' Orders, copies of which are attached at Exhibits A, B, C and D. *See* Fed. R. Evid. 201(b); *Faulkner v. Verizon Communications, Inc.*, 156 F. Supp. 2d 384, 391 (S.D.N.Y. 2001) (under Fed. R. Evid. 201(b), courts may take judicial notice of pleadings in other lawsuits that are attached to the motion as a matter of public record).

United States Justice Department), Count VII (constitutional
violations under §§ 1983, 1985(3), and 1986 by United States
Federal Courts), Counts VIII and IX (additional constitutional
violations under §§ 1983, 1985(3), and 1986 by all defendants,
including federal defendants), Count X (violations of criminal
statutes, including for concealment, false conviction, false
arrest, false prosecution, abuse of police power, slander,
malpractice, theft, and trespass), Count XI (negligence against
all defendants, including federal ones), Count XII (conspiracy
and negligent misconduct against all defendants), and Count XII
[sic] (violation of New Hampshire Constitution against all
defendants); *see also* Complaint filed in Vermont District Court,
attached at Exhibit D, ¶¶ 1, 6, 7, and Count I (constitutional
violations under §§ 1983, 1985(3), and 1986 by all defendants,
including federal defendants), Count II (intentional torts,
including fraudulent concealment, theft, trespass, false
imprisonment, false arrest, malicious prosecution, official
oppression, abuse of office, and conspiracy to defame plaintiff
by malicious criminal prosecution by unspecified defendants),
Count III (negligence by state defendants), Count IV (violation
of New Hampshire Constitution by unspecified defendants), and
Count V (Federal Tort Claim by all defendants, including federal
defendants).

### III.    ARGUMENT

The court may rely on extra-pleading materials in deciding a Rule 12(b)(6) motion to dismiss without the need to convert the motion to one for summary judgment. *See Alternative Energy, Inc. v. St. Paul Marine Fire and Marine Ins. Co.* 267 F.3d 30, 33 (1st Cir. 2001) (citing *Waterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (narrow exceptions to the rule that only the complaint is considered in a motion to dismiss is that an undisputed authentic document, such as official public records, documents central to plaintiff's claim, or documents sufficiently referred to in the complaint)). For example, a dismissal under Rule 12(b)(6) is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000). It is well-settled that the court may take judicial notice of pleadings in other lawsuits that are attached to the motion as a matter of public record. *See* Fed. R. Evid. 201(b); *Faulkner v. Verizon Communications, Inc.*, 156 F. Supp. 2d 384, 391 (S.D.N.Y. 2001); *see also Lundborg v. Phoenix Leasing, Inc.*, 91 F.3d 265, 266 (1st Cir. 1996). Similarly, in determining whether subject matter jurisdiction exists, the court may consider information outside of the pleadings in resolving pertinent factual issues. *Gonzalez v. U.S.*, 284 F.3d 281, 288 (1st Cir. 2002); Kamen *v. American*

8

*Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).  Moreover, while the court may assume as true factual allegations in the complaint, it should not draw argumentative inferences favorable to the plaintiff when considering whether jurisdiction has been shown. *Vartanian v. Monsanto Co.*, 14 F.3d 697, 700 (1st Cir. 1992) (citing *Knight v. Mills* 836 F.2d 659 (1st Cir. 1987)); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164 (1993) (assume as true factual allegations); *Norton v. Larney*, 266 U.S. 511, 515 (1925) (should not draw argumentative inferences favorable to plaintiff)).

A.   THE VEALES' CLAIMS ARE BARRED BY PRINCIPLES OF RES JUDICATA AND COLLATERAL ESTOPPEL.

1.   The Doctrine Of Res Judicata Has Broad Effect And Prohibits Litigants From Litigating Claims That Were Or Could Have Been Raised In A Prior Lawsuit.

The doctrine of res judicata or claim preclusion provides that "when a final judgment has been entered on the merits of a case, '[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Nevada v. US,* 463 U.S. 110, 129-130 (1983) (quoting *Cromwell v. County of Sac*, 94 U.S. 351, 352 (1876)).

Furthermore, while the Vermont and New Hampshire District Courts dismissed with prejudice the complaints filed by the Veales's son, David Veale, justice demands those decisions and orders to be conclusive to bar David Veale's parents from re-litigating the same facts, issues, and claims in this court.  Indeed, the doctrine of res judicata operates to preclude further litigation once there has been a final judgment in a case involving the same parties or their *privies* and the same cause of action.  *Aunyx Corp., v. Canon U.S.A., Inc.,* 978 F.2d 3, 6 (1st Cir. 1992) (emphasis added).  "The term 'privity' signifies that the relationship between two or more persons is such that a judgment involving one of them may justly be conclusive upon the others, although those others were not party to the lawsuit." *N.L.R.B. v. Donna-Lee Sportswear Co., Inc.,* 836 F.2d 31, 25 (1st Cir. 1987) (quoting *Gill & Duffus Service, Inc. v. Nural Islam,* 675 F.2d 404, 405 (D.C.Cir. 1982)).

Additionally, the transactional approach to res judicata, as used in the federal courts, "recognizes that a valid and final judgment in an action will extinguish subsequent claims 'with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *Gonzalez v. Banco Central Corp.,* 27 F.3d 751, 755 (1st Cir. 1994) (quoting Manego v. Orleans Board of Trade, 773 F.2d 1, 5 (1st Cir. 1985)). "'What factual grouping constitutes a "transaction," and what

10

groupings constitute a "series," are [matters that should] be determined pragmatically,' taking into consideration a wide variety of relevant factors, including but not limited to such things as 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations . . . .'" *Gonzalez*, 27 F.3d at 756 (quoting *Aunyx*, 978 F.2d at 7). A series of transactions is found to be present if the causes arise from a "common nucleus of operative facts." *Gonzalez*, 27 F.3d at 755. "The key is to define the underlying injury." *Id.* at 756. Also of great importance is the identity of facts surrounding the occurrence that triggered the cause of action, as opposed to the legal theory within which a complaint is framed. *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 39 (2d Cir. 1992). "To bring claim preclusion into play, a cause of action need not be a clone of an earlier cause of action." *Massachusetts School of Law at Andover, Inc. v. American Bar Association*, 142 F.3d 26, 38 (1st Cir.1998). In fact, the overarching purpose of the doctrine of res judicata is to prevent parties from using different legal theories to obtain another chance at redress for the same harm. *U.S. v. Cunan*, 156 F.3d 110, 116 (1st Cir. 1998). Here, the facts and claims the Veales asserted have been previously decided against their privies, David and Scott Veale.. *See* Exhibits C and D. "The pitfalls of

11

a more mechanical rule are obvious; making party status a sine qua non for the operation of res judicata opens the door to countless varieties of manipulation, including claim-splitting, *suits by proxy*, and forum-shopping." *Gonzalez*, 27 F.3d at 757 (emphasis added). Indeed, The New Hampshire and Vermont District Courts dismissed with prejudice all federal claims. Exhibit C at 13-14; Exhibit D at 21.  The Veales's Amended Complaint now asserts the same federal claims, which amounts to exactly one of the "countless varieties of manipulation" the doctrine of res judicata is meant to prevent.  *Id.*

     The doctrine of res judicata "is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts to the end that rights once established by the final judgment of a court of competent jurisdiction shall be recognized by those who are bound by it in every way, wherever the judgment is entitled to respect." *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294, 299 (1917) (quoting *Kessler v. Eldred*, 206 U.S. 285 (1907)). Repetitious suits are disfavored and waste not only judicial resources but the parties' resources as well.  *Sure-Snap Corp. v. State St. Bank & Trust Co.*, 948 F.2d 869, 876 (2d Cir. 1991) (in addition to protecting litigants from inconsistent judgments, the doctrine of res judicata relieves parties "of the cost and vexation of multiple lawsuits").  This is the reason the New

Hampshire and Vermont District Courts issued a protective order against the Veales's son, David Veale, from filing another complaint asserting the same allegations and claims contained in the Amended Complaint filed with this court. *See* Exhibit C at 12-13; *See also* Exhibit D at 21. Therefore, the pleading of additional incidents or new legal theories in a second complaint will not bar the application of the doctrine. *Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 39 (2nd Cir. 1992) (new legal theories do not amount to a new cause of action to defeat the application of the res judicata doctrine); *Yaba v. Roosevelt*, 961 F. Supp. 611, 622 (S.D.N.Y. 1997) (additional incidents of harassment were insufficient to defeat claim preclusion). Nor will differences in the relief requested in a prior action preclude the operation of res judicata. *See Pan Am Match Inc. v. Sears, Roebuck & Co.*, 454 F.2d 871, 875 (1st Cir. 1972); *Baltimore S.S. Co. v. Phillips,* 274 U.S. 316, 320 (1927). Until the Vermont District Court dismissed David Veales, the Veales and their son, David Veale, were simultaneously litigating the same claims and allegations before this court and the Vermont District Court.[6] "[A] litigant cannot split his cause of action and have two trials upon the same alleged breach of duty." *Pan Am Match*, 454

---

[6]On February 27, 2006, Judge Murtha of the Vermont District Court dismissed this similar lawsuit for many of the same reasons the United States asks this court to. *See* February 27, 2006 Order, attached as Exhibit D.

13

F.2d at 875. Finally, to the extent that the Veales claims are based upon events that occurred after the New Hampshire District Court dismissed the Complaints in that court, or after David Veale filed his Complaint in Vermont, those events are part of the same "core of operative facts," and, therefore, barred by the application of res judicata. *See Norman v. Niagara Mohawk Power Corp.,* 873 F.2d 634, 638 (2d Cir. 1989).

>   2.   <u>The Doctrine Of Collateral Estoppel Prevents Litigants From Raising Issues That Were Already Decided Against Them In A Prior Lawsuit.</u>

Collateral estoppel or issue preclusion is related to res judicata, but it is a separate doctrine.  Collateral estoppel bars a party from re-litigating an *issue* of fact or law. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). Collateral estoppel refers to the doctrine that "a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction. . .cannot be disputed in a subsequent suit between the same parties. . . ." *Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *Southern Pac. R. Co. v. United States*, 168 U.S. 1, 48-49 (1897)).  The First Circuit recently explained the doctrine's parameters: "The traditional legal doctrine of 'collateral estoppel' bars relitigation of any issue that, 1) a party had a 'full and fair opportunity to litigate' in an earlier action, and that, 2) was finally decided in that action, 3) against that party, and that,

4) was essential to the earlier judgment." *DeCosta v. Viacom International, Inc.*, 981 F.2d 602, 605 (1st Cir. 1992).

While the Veales' sons were the plaintiffs in the complaints filed in New Hampshire and Vermont, privity exists between the Veales and their sons, and, therefore, nonparty preclusion applies because "a nonparty either substantially controlled a party's involvement in the initial litigation or, conversely, permitted a party to the initial litigation to function as his de facto representative." *Gonzalez*, 27 F.3d at 758. Moreover, "[c]ollateral estoppel is thus both narrower and broader than res judicata." *Leather v. Eyck*, 180 F.3d 420, 426 (2d Cir. 1999). It is broader because it focuses on *issues* that have been litigated, not claims; but it is narrower in that it does not prevent a litigant from raising issues in a second lawsuit that were not, but could have been, brought in an earlier suit. *Id.* Its focus is on what was actually litigated, not what could have been litigated. The Veales's Amended Complaint raised the same issues that David Veale raised before the New Hampshire and Vermont District Courts, and both Courts dismissed these issues with prejudice

B. **IN ADDITION TO BEING BARRED DUE TO THE PRIOR LITIGATION, THE VEALES' CLAIMS MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM.**

  1. **The Veales Have Not Asserted A Valid Basis For Bringing A Constitutional Claim Against The United States Under Section 1983 Or *Bivens*.**

15

The Veales assert that the United States violated their constitutional rights as protected under 42 U.S.C. §§ 1983, 1985(3) and 1986.  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  As a threshold matter, the United States cannot be sued under deprivation or conspiracy provisions of the Civil Rights Act because it is not a "person" within the meaning of such provisions.  *Morpurgo v. Bd. of Higher Education in City of New York*, 423 F. Supp. 704, 714 (S.D.N.Y. 1976).  Furthermore, it is well-settled that the phrase "under color of state law" applies only to state actors, not federal officials.  *Wheeldin v. Wheeler*, 373 U.S. 647, 650 n.2 (1963) (§ 1983 inapplicable because federal employee is not acting under color of state law); *Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005) (§ 1983 has long been construed by the court to apply to state actors, not federal officials).  Here, the complained-of actions with respect to the United States allegedly were conducted pursuant to the federal officials' authority under federal, not state, law.  Finally, the Veales's conspiracy claims fall far short of satisfying the requirements for stating a claim under §§ 1985(3) and 1986, and, thus, his claims cannot survive a motion to

16

dismiss.  *See*, *e.g.*, *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (conspiracy must be product of some racial or otherwise class-based discriminatory animus); *Morpurgo*, 423 F. Supp. at 713 (complaints based on § 1985(3) "cannot rest on vague and conclusory allegations but must 'allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy'").

Even if the Court were to construe the Veales's constitutional claims for money damages as based upon *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), this Court would lack jurisdiction.  In *Bivens*, the Supreme Court clarified that the Constitution can support a private cause of action for damages against individual federal actors.  *Bivens*, however, does not provide a proper basis for a constitutional claim against the United States, the named federal defendant here.  As an initial matter, *Bivens* did not establish an exception to the federal government's sovereign immunity. *United States v. Mitchell*, 463 U.S. 206, 213 (1983); *United States v. Testan*, 424 U.S. 392 (1976).  Furthermore, the Supreme Court has held that, even with a waiver of sovereign immunity, there is no *Bivens* cause of action against the United States or federal agencies for damages as a result of alleged violations of

17

the Constitution. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484-86 (1994).

There also is no waiver of sovereign immunity for the Veales's claims of injunctive relief. Although the Administrative Procedure Act ("APA") waives sovereign immunity for the review of certain agency actions when injunctive relief is sought, it does not extend to agency action that "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This provision presumptively shields from judicial scrutiny an agency's decision not to prosecute or enforce, whether through civil or criminal process. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (discussing APA case). Because the crux of the Veales's allegations against the United States Department of Justice officials is that they have failed to investigate or prosecute his claims, the APA could not serve as a basis for a waiver of sovereign immunity. Furthermore, the APA applies only to agencies in the Executive Branch and not to the judiciary. 5 U.S.C. § 701(b)(1)(B). Thus, it cannot provide a waiver of sovereign immunity for the claims asserted against the New Hampshire District Court. In sum, even if the Veales's Amended Complaint were not precluded by the prior litigation, he has failed to show a waiver of sovereign immunity or otherwise state a civil rights claim against the United States.

    2.   <u>The Veales Cannot Satisfy The Prerequisites Of The FTCA.</u>

18

The Veales's tort claims stem from the alleged constitutional violations that also comprise the basis for his civil rights claims.[7]  The FTCA provides a limited waiver of sovereign immunity for claims founded on the negligent or wrongful act or omissions of federal employees acting within the scope of their employment.  28 U.S.C. § 1346(b)(1).  However, it is well-settled that constitutional claims do not fall within the waiver of sovereign immunity under the FTCA.  *See Meyer*, 510 U.S. at 478 (United States has not rendered itself liable under the FTCA for constitutional tort claims); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999) (no waiver of sovereign immunity under FTCA for suit against federal employee in official capacity based on constitutional claims); *Chen v. United States*, 854 F.2d 622, 625-26 (2d Cir. 1988) (FTCA does not extend to claims based upon direct violations of the Constitution).  Thus, as a threshold matter, the Veales's allegations do not fall within the FTCA.

---

[7] The Veales have asserted both a negligence claim and a FTCA claim.  However, the only waiver of sovereign immunity for bringing a negligence claim against the United States is under the FTCA.  As discussed *infra*, Veale has failed to satisfy the jurisdictional requirements of the FTCA.

## IV.  CONCLUSION

For the foregoing reasons,[8] the United States respectfully requests that the United States' Motion to Dismiss Plaintiffs' Amended Complaint and for Protective Order be granted, and the Veales's Amended Complaint against the United States be dismissed in its entirety.

Respectfully submitted,

UNITED STATES OF AMERICA,

MICHAEL J. SULLIVAN
United States Attorney

By:  /s/ Christopher Alberto
CHRISTOPHER ALBERTO
Assistant U.S. Attorney
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
Dated: March 15, 2006        617-748-3100

### Certificate of Service

I, Christopher Alberto, hereby certify that I caused a copy of the Defendant's Memorandum in Support of it Motion to Dismiss Plaintiffs' Amended Complaint and for Protective Order to be served on the *pro se* plaintiffs by First Class mail.

/s/ Christopher Alberto
CHRISTOPHER ALBERTO,
Assistant U.S. Attorney

---

[8] The United States has not articulated every possible case-dispositive defense to Veales's Amended Complaint in an attempt to benefit from some of the purposes behind the principles of res judicata and collateral estoppel — namely, that a party should not have to keep responding to the same issues over and over again.  Thus, the United States reserves the right to raise additional defenses prior to engaging in discovery, should this case not be dismissed in its entirety.

<u>Local Rule 7.1 Certificate</u>

     I, Christopher Alberto, attempted to call the Veales at the telephone contact number given by them on the Amended Complaint (978-874-1932), but was informed by a telephone company recording that it had been "disconnected."  Moreover, Local R.7.1 requires "counsels" to confer, that Rule's provision does not require counsel to confer with "pro se" parties before filing a motion.

                    <u>/s/ Christopher Alberto</u>
                    CHRISTOPHER ALBERTO,
                    Assistant U.S. Attorney

# EXHIBIT A

**David Veale's
District of Vermont
Complaint**

# UNITED STATES DISTRICT COURT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

## DISTRICT OF VERMONT

2005 MAY 11  P 2: 42

| | |
|---|---|
| DAVID T. VEALE, | ) |
| Plaintiff | ) |
| | ) |
| vs- | ) |
| | ) |
| DEFENDANTS, | ) |
| United States of America, | ) |
| State of New Hampshire, | ) |
| Other Known and Unknown, | ) |
| Defendants | ) |

1:05 CV 105

DEPUTY CLERK

**COMPLAINT AND PETITION**

**FOR INJUNCTION**

**JURY TRIAL DEMANDED**

## JURISDICTION

1. Original Jurisdiction of this Court is evoked pursuant to 28 U.S.C. 1331, 1132(a)(1), 1343(a)(1)(2)(3)(4), 1367(a) and this Court's Pendant Jurisdiction over violations of State Constitutional, Statutory, and Common Law claims that arises out of the same operative facts that give rise to Plaintiff's federal claims.. Venue of this court is evoked pursuant to 28 U.S.C. 1391(e) (3) on the grounds that one of the known defendants is the United States, and the Plaintiff resides at 962 Branch Brook Road, West Halifax, Vermont, 05358.

## PARTIES

2. Plaintiff, David T. Veale, Pro se, is a United States Citizen residing at 962 Branch Brook Road, West Halifax, Vermont, 05358.
3. The defendant, United States of America, and Department of Justice, Washington, D.C., are individuals and agencies employed by the United States, and at all times relevant hereto employed the federal justice department officials and court officials involved with the investigation and processing of plaintiffs' prior complaints and cases involving this, and other civil right violations. This defendant is sued individually and in its' official capacity as the United States.
4. The defendant State of New Hampshire is a state corporation organized and existing under the laws of the State of New Hampshire and the United States, and did at all times relevant hereto employ defendants, Anne E. Edwards, Esq., Senior Assistant Attorney General, and Brad W. Simpkins, Forest Ranger, Department of Resources and Economic Development, and unknown State Police Officer from Troop B, and defendants, N.H. Attorney Generals Office, Department of Resources and Economic Development, and N.H. State Police Troop C. These defendants are sued individually and in their official capacities as the State of New Hampshire, and law enforcement agencies and officials employed by and working for the State of New Hampshire.

1

5. Additional other known and unknown defendants include the United States District Court and Justice Departments and Officials involved for the District of N.H., N.H. Attorney Generals Office and Officials involved, N.H. Department of Resources and Economic Development and Officials involved, N.H. State Police Troop B and unknown Police officer involved, the County of Hillsborough, Hillsborough County Attorneys Office and Officials involved, Hillsborough County Superior Court and Court Officials involved, the Town of Bennington, NH, Dennis Mckenney, Attorney Ghazi D. Al' Marayati, Attorney Mark Larson, the Town of Deering, NH and Selectmen involved, other local, state, and federal official employees and/or agencies involved, former N.H. Lawyers and Surveyors hired by the Plaintiff and others involved, and other private individuals involved. Plaintiff reserves his right to amend this complaint to include any of these other defendants as may be deemed necessary at a later date.

## PRELIMINARY STATEMENT

6. Plaintiff, David T. Veale, Pro se, brings this civil rights action and private criminal complaint pursuant to 18 U.S.C.S. 241, 242, 28 U.S.C.S. 171, and 42 U.S.C.S. 1983, 1985(3), and 1986, and the substantive laws of the State of New Hampshire and Vermont, seeking redress and injunctive relief against defendants for the deprivation by defendants of the plaintiff's rights, privileges, and immunities secured to them under the Constitution of laws of both the United States and the State of New Hampshire, particularly his right to liberty, equal protection and due process of the laws. Plaintiff also seeks damages for negligence and conspiracy. Plaintiff also seeks a preliminary injunction and permanent injunction against the defendants seeking redress and injunctive relief to enforce said civil rights for the wrongful and unlawful arrest, seizure, and deprivation by defendants of plaintiff, and his property located in Bennington, NH without affording him due process or equal protection of the laws. All of the facts alleged and in support of this complaint are sworn to in the Affidavit of David T. Veale attached as Exhibit (A).

## ALLEGATIONS COMMON TO ALL COUNTS

7. On numerous occasions prior to, during, and after the following events, and as part of the object and intent of this conspiracy, the defendant, United States, through its' N.H. Federal Courts and Justice Departments, became aware of this wrongful and unlawful conspiracy to deny plaintiff his property rights in N.H. without due process, and to deny him access to the courts by a jury trial for redress in any case, and to a proper investigation and prosecution of these crimes, and in breaching their duties owed to the plaintiff, they perpetrated, instigated, and condoned the following pattern of events leading up to these alleged civil right violations involving plaintiffs' property located in Bennington, NH, in a means to further carry out the object of this conspiracy and fraudulently conceal plaintiffs' various claims against the defendants. See – Writ of Mandamus filed with this case.

8. In October 1999 Plaintiff filed a Federal Tort Claim relating to these identical claims and issues raised herein, and said Tort Claim is hereby deemed denied, for failure to respond to said Tort Claim by the date of this filing.

2

9.  On January 27, 2000 the Plaintiff acquired certain land and buildings located at 443 North Bennington Road, in Bennington, New Hampshire and recorded at Volume 6204 Page 1527 of the Hillsborough County Registry of Deeds.  See – Exhibit (B) Copy of Deed, Veale et al., to Veale et al.

10. Plaintiff contends his deed (Exhibit-B), was originally acquired by his parents in 1978, and was intended to describe and convey the original boundary monuments of at least 75 acres of property he now owns and occupies exclusive of anyone.

11. At all times relevant hereto, and to this date, no other known person or entity has established legal title at law to any portion of the above-referenced 75 acres of property presently owned and occupied by the plaintiff.

12. At all times relevant hereto, including over the past 25 plus years to date, plaintiff has always lived on and remained in exclusive possession of the above-referenced 75 acres of property with his family, during which time he cut, harvested, and managed his own forestland as a means of self-employment.

13. At all times relevant hereto plaintiff was, has been, and now is a good citizen, known to neighbors and acquaintances to have behaved and conducted himself in a becoming manner all his life.

14. In the Spring of 1998 after learning that his neighbor, Lloyd Newhall, was claiming to own some of his 75 acres, plaintiff, and his family, posted their property pursuant to state law and notified the defendant, Bennington Police Chief.

15. Upon information and belief, defendant, Dennis McKenney, trespassed onto plaintiffs property and, and without plaintiff's permission, removed plaintiff's "No Trespassing" signs, and when confronted by the plaintiff and asked to leave, he refused to leave claiming plaintiff did not own the property in question.

16. On various occasions thereafter, plaintiff consulted with defendants, Selectmen and Police Chief for the Town of Bennington, NH regarding numerous issues including but not limited to, a) the erroneous tax maps and improper location of the town line with Deering, NH, b) that they were illegally taxing Lloyd Newhall for plaintiff's  property while only taxing plaintiff for 5 acres, c) that the defendant, Dennis McKenney, had been caught several times trespassing and removing plaintiff's "NoTrespassing" signs from his property without plaintiff's permission, and was told to leave plaintiffs' property and didn't, and d) their basis for failing to process and issue plaintiff an Intent to Cut wood on his 75 acres.

17. Plaintiff was told by defendants, Selectmen and Police Chief for the Town of Bennington, N.H., that there decisions were based upon their current records which indicated plaintiff only owned 5 acres instead of the 75 acres he claims, and it appeared to be a civil matter concerning a boundary dispute between two adjoining landowners. See Exhibit (C) Copy of Letter from Town of Bennington.

18. Plaintiff alleges the defendant town officials customs, usages, and procedures used by them described above, wee done while acting on behalf of the Town of Bennington, N.H. and did not afford him equal protection or due process of law by not providing him proper and amble notice or a right to be heard prior to any of the deprivations of his property rights which occurred.

19. Thereafter, defendants, Selectmen and Police Chief for the Town of Bennington, N.H., in concert with others defendants, and defendant Dennis McKenney, failed and neglected to properly survey and correct the obvious errors in the town line

with Deering, NH, or to correct their tax maps in order to properly identify and tax plaintiff for his 75 acres, or to arrest and prosecute defendant, Dennis McKenney, for criminal trespass, or to issue plaintiff an Intent to Cut Permit for his 75 acres, or to allow plaintiff to claim a legal residence in his mobile home where he has always lived on his 75 acres, or to allow plaintiff to register his motor vehicles. By doing so, plaintiff alleges defendant employees for the Town of Bennington, did knowingly fail, neglect, and refrain from performing their duties owed to plaintiff, as it related to the issue involving the plaintiff's property and town line errors, and that said duties are imposed upon them by law and were clearly inherent in the nature o f their respective offices as Selectmen and Police Chief.

20. To this date, the defendants have not properly and impartially corrected the town line with Deering, NH, and have not corrected their tax maps to identify plaintiff as owner of his above-referenced property where he and his family reside, and now do not tax plaintiff properly as a landowner or resident of the Town of Bennington, NH in accordance with applicable state laws and privileges equally afforded to other citizens and landowners residing in Bennington, NH, in order to further conceal plaintiffs' legally established residence on his property.

21. As a result of defendants' wrongful and unlawful conspiracy and their wrongful and unlawful attempt to put it into effect, Plaintiff was wrongfully and illegally deprived of his right and ability to continue owning and paying tax on his real property in Bennington, NH described in his above-referenced deed, without being afforded any due process or equal protection of the laws.

22. As a result, on March 20, and 30, 2000, defendant Department of Resources and Economic Development and Forest Ranger, Brad Simpkins, motivated by group animus towards the plaintiff, became dissatisfied with the plaintiff exercising his right to his property, and acting in concert with the above defendants, and upon the misrepresentations of defendant Dennis Mckenney as to the true boundaries of plaintiffs' property, and acting on false pretense and without probable cause or good faith belief, wrongfully and in bad faith, trespassed on plaintiff's property, and wrongfully caused (2) cease and desist orders to issue against the plaintiff, attaching and seizing any and all wood plaintiff had cut down for himself, and ordered plaintiff to stop cutting, harvesting, and/or removing any more new wood from any of his Bennington property, on the basis he did not believe the plaintiff owned the property in question, and then left. See – Exhibits (D and E) attached - Copies of (2) Cease and Desist Orders issued by the defendant 03/20,03/30/2000.

23. By doing so, defendant N.H. Forest Ranger, Brad Simpkins, and the Department of Resources and Economic Development, arbitrarily failed and neglected to properly investigate and follow normal routine operating procedures in order to determine that this involved a legitimate private boundary line dispute between two private landowners, one of which included the interest of the plaintiff, and did so without probable cause or having a good faith objective belief that plaintiff did not own, or have interest in, the subject property in question.

24. As a result of the defendants' wrongful and unlawful conspiracy and their wrongful and unlawful attempt to put it into effect, plaintiff was wrongfully and illegally deprived of his ability to continue operating his wood business and using

4

his personal property in Bennington, NH without being afforded any due process or equal protection of the laws prior to this deprivation

25. On June 21, 2001 defendant N.H. Attorney Generals Office and Senior Assistant Attorney General, Anne E. Edwards, Esq., acting in concert with the above defendants, and acting on false pretense and without probable cause, and without any expert witnesses, wrongfully and in bad faith, filed an equity case for Injunction against the plaintiff, and his brother Scott Veale, alleging he and his brother violated the above-referenced cease and desist orders by cutting wood on property belonging to another.

26. On June 29, 2001, defendant Hillsborough County Superior Court and Judge James Barry, Jr., acting in concert with the above defendants, and acting on false pretense and without probable cause, and on short notice, arbitrarily failed and neglected to properly consider the plaintiffs' legal standing as a landowner in Bennington, and failed to follow normal court procedures for issuing preliminary injunctions, and wrongfully ruled plaintiff was cutting on property of another based upon the defendants' current erroneous tax maps, and wrongfully caused an injunction to issue which prohibits plaintiff from cutting and/or removing any more wood from his property in Bennington, NH. See – Exhibit (F and G) attached - Copy of Petition and Order issued by the defendants dated 06/29/2001.

27. Plaintiff was not afforded his right to obtain a continuance to obtain legal counsel, answer the petition, or exercise his right to own his property in question, or to have his real estate boundary dispute resolved, incidental to the issuance of the Preliminary Injunction by the defendant superior court judge.  This case was then continued without day and is still awaiting a trial date in state court.

28. On August 6, and 31, 2001, plaintiff and his brother Scott Veale, received official notices through the mail from the defendant Forest Ranger, Brad Simpkins, threatening the plaintiff and his brother with criminal prosecution if they continued to occupy the property they claimed to own, on the basis the property belonged to another. See – Exhibits (H and I) attached - Copies of Letters from DRED dated – 08/06/2001 and 08/31/2001.

29. On December 21, 2002, defendants, Forest Ranger Brad Simpkins, Bennington Police Chief Steve Campbell, and other unknown State Police Officer from Troop B with a loaded shotgun, acting in concert with other defendants and pursuant to this unlawful conspiracy, approached the plaintiff and his brother Scott Veale on their property, and began threatening and ordering plaintiff to refrain from doing anything else whatsoever with his 75 acres of property again, and then left.

30. As a result of defendants' wrongful and unlawful conspiracy and their wrongful and unlawful attempt to put it into effect, plaintiff was wrongfully deprived of his federally protected property rights and ability to continue owning and using his property and operating his wood business in Bennington, NH without being afforded due process or equal protection of the laws.

31. Defendant Hillsborough County Attorney, maliciously intending to cause plaintiff unjustly to suffer punishment and to be deprived him of his liberty, and to oppress and ruin him and his business, in the City of Manchester, County of Hillsborough, State of New Hampshire, on or before June 23, 2003, and acting in concert with the above defendants without any expert witnesses, and acting on false pretense

5

and without probable cause, maliciously conspired with other defendants to falsely accuse plaintiff of Theft and Timber Trespass, and by means of false and misleading testimony and based upon the defendants' current erroneous tax maps, in order to have plaintiff indicted and convicted of the crimes of Theft and Timber Trespass, under the laws of the State of New Hampshire and punished by a fine and imprisonment.

32. On June 23, 2003 through perjured testimony and based upon the defendants' current erroneous tax maps, defendants maliciously accused plaintiff, without probable cause or expert witness, of the above crimes of Theft and Timber Trespass before the grand jury of Hillsborough County, and as a result the grand jury returned both indictments alleging the plaintiff committed timber trespass and theft of property he claims to own as follows: See Exhibits (J and K) attached - Copies of Indictments dated 06/19/2003.

33. On September 5, 2003 Plaintiff was appointed defendant Public Defender, Attorney Ghazi D. Al' Marayati.

34. To this date, the plaintiff has been repeatedly requested by defendant Public Defender, and required by the defendant Hillsborough Superior Court Judge James Barry, to waive his right to a speedy trial guaranteed to him under the Sixth Amendment of the United States Constitution, in order to obtain a continuance of the trial for purposes of obtaining a Licensed Land Surveyor as an expert witness to be used in behalf of his defense.

35. On February 25, 2004, and thereafter, the defendants acting in concert with each other in furtherance of the object to maliciously prosecute the plaintiff and violate his civil rights, the defendant superior court Judge, James Barry, Jr., denied plaintiffs' counsels' request for the additional services of a Land Surveyor as an expert witness in the preparation of his defense, and the defendant county attorney refuses to dismiss the frivolous and malicious charges against the plaintiff and has failed and neglected to either obtain or disclose any expert witnesses to date, and the defendant Public Defenders, Attorneys Ghazi Al' Marayati and Mark Larson, have not been willing to provide adequate representation of the Plaintiff, or his brother Scott Veale, concerning these issues, and wrongfully caused a motion to determine competency to be filed and granted against plaintiffs' brother Scott Veale, so to intentionally cause further unnecessary and unreasonable delay of the plaintiffs' public trial to date.

36. All of the events which took place and actions complained of above, were committed by the various governmental units, acting within their official capacities, and in concert with each other, with intent to manipulate and delay the outcome of the resolution of Plaintiffs boundary dispute, and were motivated by group animus towards the Plaintiff, with the intent to deprive him of his aforesaid property rights, liberty, and life in New Hampshire, without ever affording him due process of law or equal protection, because of the Plaintiffs economic status as the lawful landowner of the disputed property involved that others are claiming to own through fraud, and because of Plaintiffs inability to hire or obtain a competent lawyer or surveyor by now to complete a survey and title report of his property, and because of his pro se status and persistence over the years in trying to settle his property rights.

37. As a result, the plaintiff was forced off of his property in Bennington, NH, and forced to live elsewhere through the years against his will, and eventually forced to move to Vermont in order to claim a legal residence there in 2004, while no other private adverse landowner in New Hampshire was ever required to file any case in any court against the plaintiff to prove their ownership of the disputed properties in question that the plaintiff rightfully owns today.

38. As a result of the defendants wrongful and unlawful conspiracy and their wrongful and unlawful attempts to put it into effect, plaintiff was never afforded his right to establish ownership or a legal residence on any of his property in Bennington, NH prior to the authorities depriving him of his rights as a citizen and landowner, and the authorities pattern of activities towards the Plaintiff was aimed at singling him out and did harass him and intentionally cause him extreme hardships, economic losses, and infliction of mental distress, in order to further fraudulently conceal the plaintiffs' claim to his property and manipulate the plaintiffs ability to defend his property rights in order to alter the entire outcome of his boundary dispute to their own benefit, and obstruct the proper and due administration of justice. As a result, Plaintiff either lost or cannot use anything he owns to date in Bennington, NH, and was never afforded a fair day in any impartial court for redress of his grievances. He was also repeatedly defamed through the years by a number of other known and unknown defendant lawyers, surveyors, and local authorities involved, for pursuing and exercising his rights to redress and to resolve his boundary dispute involving his property, and was eventually forced to move out of N.H. as a result.

39. The reasonable market value of plaintiffs' property at the time of the unlawful taking was $250,000.00.and defendants are liable to plaintiff for its' value.

40. Plaintiff before his losses at the hands of the defendants was an able bodied man, well able to work his self-employed wood business and continue living on his own property and receiving an average of $500.00 per week as his wages

41. As a result of defendants' wrongful and unlawful conspiracy and their wrongful and unlawful attempt to put it into effect, plaintiff's life is disrupted and burdened with anxiety and scrutiny, and his ability to prepare an adequate defense has been impaired, and plaintiff has been wrongfully deprived of his federally protected property rights and ability to continue owning and using his property and operating his wood business in Bennington, NH without being afforded due process or equal protection of the laws, and plaintiff has been denied his federal rights secured to him to be afforded a speedy public and impartial trial, to be confronted with adverse witnesses, to compulsory process for favorable witnesses, and right to adequate counsel. Plaintiff has been caused to suffer great mental anguish and suffering, and has been forced to expend in excess of the sum of $5,000.00 in defending himself, and has been greatly injured in credit and circumstances, and his earning capacity has been greatly decreased and he has been unable to resolve his boundary dispute and allowed to return to his property and inconvenienced in his motivation and performance of his work, which will remain permanent until this case is settled. Plaintiff has suffered damages in all of the above particulars in the total sum of $1,000,000.00, itemized as follows:

Loss of Property                              -   $250,000.00

| Loss of Wages from Self-Employment | - $125,000.00 |
| Mental Anguish and Suffering | - $625,000.00 |

42. In committing the acts alleged, defendants acted with malice towards the plaintiff, and used unreasonable, unwarranted, and excessive force against him, and his brother Scott Veale, in an effort to carry out the object of this unlawful conspiracy and to unlawfully gain possession of the plaintiffs' privately owned property in Bennington, N.H, and did so in order to manipulate the outcome and resolution of the plaintiffs' ongoing property dispute with other private landowners.

43. By reason of this wrongful and unlawful conspiracy, and by reason of the unlawful, willful, and wantom acts and conduct on the part of all of the defendants in their efforts to carry out the object of this conspiracy, plaintiff was never afforded an impartial trial by jury in a number of different cases where he was entitled to one, he was wrongfully denied equal access to the New Hampshire state and federal courts to adequately resolve any of his legal matters involving his property rights, and he was wrongfully and unlawfully defamed and forced to live with a false reputation based upon the misrepresentations caused by the various combined acts of the defendants involved to fraudulently conceal this conspiracy.

### COUNT I:  First, Fourth, Fifth, Sixth, and Fourteenth Amendments And 42 U.S.C. 1983, 1985(3), and 1986,

44. Plantiff repeats and incorporates by reference all of the foregoing allegations contained in paragraphs 1 – 43 above and makes them a part of this Count.

45. Plaintiff alleges by defendants engaging in the conduct aforesaid, they either individually or jointly, combined their efforts under color of law while acting within the scope of their official capacities, to carry out the object of this conspiracy, and did so without a good faith belief in the reasonableness of their actions, and thereby directly and proximately deprived plaintiff of his civil rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and secured to him under 42 U.S.C. 1983, including his right to Freedom of Speech and Right to Petition his government for his Grievances, his right to be free from unlawful search and seizure of his property, his right to be afforded due process and equal protection of the laws, and his right to a speedy trial, adequate counsel and an expert witness in his defense.

46. All of the above named defendants had a duty and responsibility owed to the plaintiff to uphold his aforesaid federally protected constitutional rights and to exercise due care so as to ensure the proper and lawful conduct consistent with the equal rights of all citizens.  Despite said duties, defendants breached their duties aforesaid by failing and neglecting to afford plaintiff due process, and to correct their erroneous tax maps and recognize plaintiff as a legal resident and landowner, and by engaging in the pattern of misconduct set forth above.

47. All of the defendants should have known this type of conduct was violative of plaintiff's aforesaid substantial and procedural due process rights.

48. As of a result of the defendants' wrongful and unlawful conspiracy and their wrongful and unlawful attempt to put it into effect, plaintiff aforesaid civil rights

8

were violated, he was illegally deprived of his property in Bennington, NH and was forced to live and work elsewhere against his will, and has caused him to suffer and sustain damages to his person, property, and good reputation. By reason of the unlawful conspiracy, and by reason of the unlawful, willful, and wantom acts and conduct on the part of all of the defendants in their efforts to carry out the object of this conspiracy, and defendants use of excessive force, plaintiff is entitled to recover real, consequential, non-economical damages from defendants, in the sum of $5,000,000.00.

49. Under these extreme and very extrodinary circumstances plaintiff is further entitled to immediate preliminary and permanent monetary and other injunctive relief against the defendants enjoining them from future conduct aimed at interfering with plaintiffs aforesaid constitutional rights, and an injunction to enjoin the pending civil and criminal cases now pending against the plaintiff in state court, and to begin compensating plaintiff for his numerous losses.

50. Plaintiff does not have any other adequate remedy at law and cannot obtain this type of injunctive relief in any other court at this time.

51. By reason of this unlawful conspiracy, and by reason of the unlawful, willful, and wantom acts and conduct on the part of all of the defendants in their efforts to carry out the object of this conspiracy, and defendants use of excessive force, plaintiff was violated and is therefore entitled to recover damages from defendants, in the sum of $5,000,000.00.

## COUNT II : Intentional Torts

52. Plantiff repeats and incorporates by reference all of the foregoing allegations contained in paragraphs 1 – 51 above and makes them a part of this Count.

53. Plaintiff alleges by defendants engaging in the conduct aforesaid, they either individually or jointly, combined their efforts under color of law while acting within the scope of their official capacities, to carry out the object of this conspiracy, and did so without a good faith belief in the reasonableness of their actions, and thereby committed fraudulent concealment, theft, trespass, false imprisonment, false arrest, malicious prosecution, official oppression, abuse of office, and conspiracy to defame plaintiff by malicious criminal prosecution.

54. As of a result of the defendants' wrongful and unlawful conspiracy and their wrongful and unlawful attempt to put it into effect, and as a proximate and reasonably foreseeable result of all of the defendants wrongful conduct aforesaid in furtherance of this conspiracy, plaintiff was violated and illegally deprived of his property in Bennington, NH and was forced to live and work elsewhere against his will, and has caused him to suffer and sustain damages to his person, property, and good reputation. By reason of this unlawful conspiracy, and by reason of the unlawful, willful, and wantom acts and conduct on the part of all of the defendants in their efforts to carry out the object of this conspiracy, and defendants use of excessive force, plaintiff is entitled to recover real, consequential, non-economical damages from defendants, in the sum of $5,000,000.00.

## COUNT III : Negligence

55. Plaintiff repeats and incorporates by reference all of the foregoing allegations contained in paragraphs 1 – 54 above and makes them a part of this Count.

56. Plaintiff alleges by defendants engaging in the conduct aforesaid, they either individually or jointly, combined their efforts under color of law while acting within the scope of their official capacities, to carry out the object of this wrongful and unlawful conspiracy, and did so without a good faith belief in the reasonableness of their actions, and thereby did committed negligence.

57. All of the above-named defendants had a duty and responsibility owed to the plaintiff not to interfere with his right to life, liberty, and property, and to be free from intimidation, physical abuse, unreasonable, unwarranted and unlawful physical restraint, detention, false imprisonment, false arrest, malicious prosecution, and free from the infliction of emotional distress and mental anguish.

58. Despite their duties aforesaid, defendants, while acting as agents and employees of the defendants, State of New Hampshire, County of Hillsborough, and town of Bennington, NH, acted in concert with each other and in furtherance of the object of this conspiracy, and breached their duties aforesaid by engaging in the pattern of conduct as set forth in paragraphs 1 through 57 above.

59. Defendants are vicariously responsible for the conduct of all other defendants for having acted in concert with each other to carry out the object of this conspiracy.

60. As of a result of the defendants' wrongful and unlawful conspiracy and their wrongful and unlawful attempt to put it into effect, and as a proximate and reasonably foreseeable result of all of the defendants wrongful conduct aforesaid in furtherance of this conspiracy, plaintiff was violated and illegally deprived of his property in Bennington, NH and was forced to live and work elsewhere against his will, and has caused him to suffer and sustain damages to his person, property, and good reputation. By reason of the unlawful conspiracy, and by reason of the unlawful, willful, and wantom acts and conduct on the part of all of the defendants in their efforts to carry out the object of this conspiracy, and defendants use of excessive force, plaintiff is entitled to recover real, consequential, non-economical damages from defendants, in the sum of $5,000,000.00.

## COUNT IV : Violation of New Hampshire Constitution

61. Plaintiff repeats and incorporates by reference all of the foregoing allegations contained in paragraphs 1 – 60 above and makes them a part of this Count.

62. Plaintiff alleges by defendants engaging in the pattern of conduct aforesaid, they either individually or jointly, combined their efforts under color of law, and violated plaintiff's State Constitutional Rights set forth in the New Hampshire Constitution Part 1, Art. 1, 2-a, 2d, 8, 12, 14, 15, 18, 19, 20, 22, 32, and 35.

63. As a direct and proximate result of all of the defendants combined efforts to carry out the object of this conspiracy, plaintiff suffered loss of liberty and property, injury, discomfort, loss of use of his property, emotional distress and mental anguish, loss of consortium, loss of personal property, fear, and was unable to attend to his usual occupation and pursuits, and the loss and the enjoyment of life,

and other consequential and non-economical damages, all to the damage to the plaintiff in the sum of $5,000,000.00.

## COUNT V: Federal Tort Claim

64. Plaintiff repeats and incorporates by reference all of the foregoing allegations contained in paragraphs 1 – 63 above and makes them a part of this Count.

65. Plaintiff alleges, by the defendants engaging in the conduct aforesaid, they either individually or jointly, combined their efforts under color of law while acting within the scope of their official capacities, to carry out the object of this wrongful and unlawful conspiracy, and did so without a good faith belief in the reasonableness of their actions, and thereby did commit negligence, fraudulent concealment, and conspiracy against the plaintiff.

66. All of the above-named defendants had a duty and responsibility owed to the plaintiff through the years not to interfere with plaintiffs' rights to life, liberty, and property, and to assure he be free from intimidation, physical abuse, unreasonable, unwarranted, and unlawful physical restraint, detention, false imprisonment, false arrest, malicious prosecution, and free from the infliction of emotional distress and mental anguish, but failed and neglected to perform those duties.

67. Despite their duties aforesaid, defendants, N.H. Federal Court Judges and Justice Department Agents involved, while acting as agents and employees of the defendant, United State of America, also in a means to further the object of this conspiracy, acted in concert with each other and breached their duties aforesaid by engaging in the pattern of conduct as set forth in paragraphs 1 through 66 above.

68. Defendants are vicariously responsible for the conduct of all other defendants for having acted in concert with each other to carry out the object of this conspiracy.

69. As of a result of the defendants' wrongful and unlawful conspiracy and their wrongful and unlawful attempt to put it into effect, and as a proximate and reasonably foreseeable result of all of the defendants wrongful conduct aforesaid in furtherance of this conspiracy, acted in concert with each other and breached their duties aforesaid, plaintiff was violated and illegally deprived of his property in Bennington, NH and was forced to live and work elsewhere against his will, and has caused him to suffer and sustain damages to his person, property, and good reputation. By reason of the unlawful conspiracy, and by reason of the unlawful, willful, and wantom acts and conduct on the part of all of the defendants in their efforts to carry out the object of this conspiracy, and defendants use of excessive force, plaintiff is entitled to recover real, consequential, non-economical damages from defendants, as stated in said Tort Claim in the sum of Twenty-Eight Million Dollars, ($28,000,000.00).

## RELIEF REQUESTED

**Wherefore,** plaintiff requests the Honorable Court;

A. Grant Judgment against all of the defendants for their conduct aforesaid in the sum
   of (Forty-Eight Million Dollars ($48,000,000.00), including punitive damages,
   together with interests, costs and reasonable attorney's fees under 42 U.S.C. 1988;

B. Grant immediate monetary injunctive relief against the defendants in the amount
   of Five Hundred Thousand Dollars, ($500,000.00), to immediately assist and
   compensated the plaintiff in rehabilitating his life in Vermont;

C. Grant a preliminary injunction and removal of the pending wrongful and malicious
   criminal and civil cases brought by the defendants in the New Hampshire state
   court against him involving his aforesaid private property rights in Bennington,
   N.H., and enjoin them pending the resolution of this civil rights case;

D. Order a stay of the June 29, 2001 (Exhibit – G) state court injunction issued
   against the plaintiff, in order to allow him to return to his private property and
   retrieve his fire wood that he cut over the past several years that has begun to rot;

E. After a hearing or hearings, issue a permanent injunction enjoining all of the
   defendants, either individually or collectively, from filing any further frivolous
   cases against the plaintiff involving his private property rights in New Hampshire
   and/or otherwise interfering with or manipulating in any way with plaintiffs'
   aforesaid private property dispute and private property rights in the future;

F. Grant such other and further relief as the Court may deem equitable and just.


                                          Respectfully submitted,


David T. Veale, Pro Se,                   Date: April 20th, 2005
962 Branch Brook Road,
West Halifax, VT 05358
(802) 579-7390


                                                                    12

# EXHIBIT B

**David and Scott Veales'
District of New Hampshire
Amended Complaint**

U.S. DISTRICT COURT
DISTRICT OF N.H.
UNITED STATES DISTRICK REPOSITORY
FOR THE                 FILED
DISTRICT OF NEW HAMPSHIRE
Nov 23   11 36 PM '98

Civil Action Number   CV-98-441-B

Scott W. Veale
David T. Veale                          AMENDED COMPLAINT
                                        JURY TRIAL DEMANDED

v.

United States of America,
et al.

## PRELIMINARY STATEMENT

1.    Scott W. Veale and David T. Veale, Plaintiffs
herein, pro se, brings this civil rights action and private
criminal complaint pursuant to 18 U.S.C.S. 241, 242, 371,
871-877, 1503, 1510, 1511, 1513, 1957, 1959(a)(2,3,5,8), and
1964(c), and under 42 U.S.C.S. 1983, 1985(3) and 1988 and
the substantive laws in the State of New Hampshire, seeking
redress and injunctive relief to enforce said civil rights
for the wrongful and illegal deprivation by the Defendants
of Plaintiffs' Life, Liberty, and Property, without the Due
Process of Law, in the form of a grand conspiracy to
permanently deny Plaintiffs their equal rights, privileges
and immunities pertaining thereto and secured to them under
the Constitutional Laws of both the United States and the
State of New Hampshire, particularly their rights to
Petition their Government and Freedom of Speech, to Vote, to
Bear Arms, to Individual Privacy, to the Full Enjoyment of
their Property, to Equal protection of the laws, to
Privilege against Self-Incrimination, to Freedom from
unreasonable Search and Seizure, to the Due Process of Law,
to Habeus Corpus, and to an impartial Trial by Jury.

Plaintiffs, pro se, brings **Count I** against the United
States and New Hampshire Justice Departments, **Count II**
against the T/O Marlborough, NH et al., **Count III** against
the T/O Bennington, NH et al., **Count IV** against the T/O
Gilsum, NH, **Count V** against Plaintiffs'-previous Lawyers and
the N.H. Bar Association, **Count VI** against Plaintiffs'
previous Surveyors and the N.H. Board of Licensure, **Count
VII** against the N.H. State and U.S. Federal Courts, **Count
VIII and IX** against all defendants named, **Count X** against
violation of U.S.C. Title 18, **Count XI** for Negligence,
**Count XII** for Conspiracy, and **Count XIII** for violation of
N.H. Constitution, jointly against all named defendants.

000001

## Jurisdiction

2.   Jurisdiction of this Court is evoked pursuant to 18
U.S.C. 1964, 28 U.S.C. Section 1331, 28 U.S.C. Section 1343,
and the Court's Pendent jurisdiction over State
Constitutional, statutory, and common law claims that arises
out of the same operative facts that gave rise to
Plaintiff's federal claims.   Venue of this Court is evoked
pursuant to 18 U.S.C.S. 1965 and 28 U.S.C. Section
1391(b)(o) on the grounds that all defendants reside in New
Hampshire and all unlawful acts complained of were committed
within New Hampshire.

## Defendants

United States of America, United States Attorneys Office,
U.S. Supreme Court, U.S. First Circuit Court of Appeals,
U.S. Bankruptcy Court, U.S. District Court for N.H.
State of New Hampshire, N.H. Attorney Generals Office,
N.H. Supreme Court, Cheshire and Hillsborough County
Superior Courts, Concord, Hillsborough, and Keene District
Courts, N.H. State Police Officers and Department of
Transportation, Swanzey and Keene Police Departments, Town
of Marlborough, Bennington, and Gilsum, N.H., All Former
Marlborough Selectmen since 1980, and respective Police and
Fire Departments, Keene Publishing Corporation, Previous
N.H. Attorneys and Surveyors, Former Legal Counsel for the
Towns of Marlborough, and Bennington, NH, all named-abutters
on survey of Plaintiffs' Farm.

3.   Defendants, agencies and employees of the United
States, Attorneys Office and Federal Courts for New
Hampshire and the First Circuit, are employees and agencies
organized and existing under the laws of the United States,
and did at all times relevant hereto employ defendant
members of the Department of Justice and Federal Courts
during the times at issue in this case. They are all sued
jointly in their official and administrative capacities.

4.   Defendants, agencies and employees of the New
Hampshire Attorney Generals Office and N.H. State Courts,
are employees and agencies organized and existing under the
laws of the State of New Hampshire, and did at all times
relevant hereto employ the defendant members of the N.H.
Department of Justice and State Courts during the times at
issue in this case.   They are all sued jointly in their
official and administrative capacities.

5.   Defendants, Town of Marlborough, Bennington and
Gilsum, Selectmen, Policemen and Firemen, are employees
organized and existing under the Laws of each Town and did
at all times relevant hereto employ the defendants, members
of the Town(s) Selectmen, Police and Fire Departments.   They

000002

are all sued jointly and each in their municipal, official and individual capacities.

6.    Defendants, employees of the N.H. State Police and Department of Transportation, are employees organized and existing under the Laws of the State of New Hampshire, and did at all times relevant hereto employ defendants, State Police Officers and Highway Departments. They are sued in their official and individual capacities.

7.    Defendant, United States of America, is a corporation organized and existing under the laws of the United States, and did at all times relevant hereto employ Defendants, U.S. Justice Department and Federal Court employees.

8.    Defendant, State of New Hampshire, is a corporation organized and existing under the laws of the State of New Hampshire, and did at all times relevant hereto employ Defendants, N.H. Justice Department, N.H. State Police and Transportation Department, and State Court employees.

9.    Defendant, Town of Marlborough, is a municipal corporation organized and existing under the laws of the State of New Hampshire, and did at all times relevant hereto employ Defendants Former Selectmen, Police and Fire Department employees.

10.    Defendant, Town of Bennington, is a municipal corporation organized and existing under the laws of the State of New Hampshire, and did at all times relevant hereto employ Defendants, Former Selectmen Flanders, Sweeney, and Trow, and the Police Department employees.

11.    Defendant, Town of Gilsum, is a municipal corporation organized and existing under the laws of the State of New Hampshire, and did at all times relevant hereto employ Defendants Selectmen Hasbrouch, Doodley, and Miller, and the Police and Fire Department employees.

12.    At all times material hereto, the Defendants State and Federal Justice Departments and State and Federal Court Judges, Local Selectmen, Police and Fire Departments, and Former Lawyers, were acting under color of state law, statute, ordinance, regulation, custom and usage as employees for the State and Federal Justice Departments, Judges for the Federal and State Courts, and employees for the Towns of Marlborough, and Bennington, New Hampshire.

13.    At all times material hereto, the Defendants Town of Marlborough former Counsel, Police Department, Selectmen, and Supervisors of the Checklist, are or were formerly, duly appointed, employed, and acting attorneys, policemen, selectmen, and supervisors of the voter checklist of the

000003

Town, and municipal corporations and governmental subdivisions of the State of New Hampshire, and each and all of the acts of defendants alleged herein were done by defendants, and each of them, not as individuals, but under the color and pretense of state laws, statutes, ordinances, regulations, customs and usages of the State of New Hampshire, the Towns of Marlborough, Bennington and Gilsum, and the County of Cheshire, and under the authority of their office as counsel, police chief, police officers, Selectmen and Supervisors of the Voter Checklist for said Towns.

14.    Defendants, Previous Lawyers and Surveyors, are private N.H. Attorneys and Surveyors, duly licensed as such and practicing in those areas of expertise, and were hired by the Plaintiffs over the past 20 years to assist them in the legal matters then pending before the State and Federal Courts.  They are each sued jointly and individually in their official, professional, and individual capacities.

14.    Defendant, Keene Publishing Corporation, is a corporation organized and existing under the laws of the State of New Hampshire, and did at all times relevant hereto employ Defendant Editor Thomas Carney and other unknown employees.  They are each sued jointly and individually in their official, professional, and individual capacities.

15.    Defendants, named-abutters on the 39-acre survey of Plaintiffs' Farm in Marlborough, NH are private land owners and persons claiming adverse to Plaintiffs' property rights and interests located in Marlborough, NH which is the subject property of this dispute, and did at all times relative hereto, claim adverse possession of Plaintiffs' additional property outside of the surveyed areas, through fraud, false pretense, and conspiracy.  They are all sued jointly and individually in their own capacities.

Count I:  First, Fifth, Thirteenth, and Fourteenth Amendments, and 42 U.S.C. Section 1983, 1985(3), 1986.

16.    In September of 1980, Plaintiffs began researching the title and boundaries of their property in Marlborough, NH, and in December, discovered that [their] title to said property potentially involved the criminal cover-up and extortion of several hundred acres of unused farmland on the hill where their farm was located, that rightfully belonged to Plaintiffs, and their family.  As a result, Plaintiffs became publicly known in the Cheshire County area for their discovery because it involved a public controversy over property rights of Plaintiffs that they could be losing to adverse possession on a daily basis.

17.    On or about November 18, 1981, Plaintiffs brought to the attention of the Defendant, N.H. Attorney Generals Office, by way of a handwritten complaint, said real estate

000004

concern involving a 1975-76 fraudulent survey and title abstract of said property Plaintiffs' parents, Theodore and Dorothy Veale, purchased in September of 1968.

18.   On or about November 1988, Plaintiffs also brought to the attention of the Defendant, U.S. Attorney Generals Office, by way of a handwritten complaint, the same real estate dispute concerning said fraudulent survey and title abstract of said property Plaintiffs' parents, Theodore and Dorothy Veale, purchased in September of 1968, and the concerns Plaintiffs had raised earlier in their previous complaints that were mis-handled by the above defendant, N..H. Attorney Generals Office.

19.   The purpose of filing said complaints was to request defendants to do a criminal investigation into the alleged criminal cover-up of the true history of said property which Plaintiffs desired to acquire a "clear" future interest to once said improprieties were removed.

20.   Instead of conducting a proper investigation into the matter that Plaintiffs allege here would have revealed criminal' wrongdoings and misconduct on the part of other named defendants, including Plaintiffs' former lawyers and surveyors, Defendants State and Federal Attorneys Offices, conspired with other defendants, to further discriminate against the Plaintiffs and violate their equal rights to protection of the laws as citizens secured to them under the First, Fifth, and Fourteenth Amendment, by denying them their right to petition their government for their grievances and refusing to properly investigate for them said alleged criminal conspiracy, by claiming the matter was strictly civil.

21.   Plaintiffs allege that, here and through repeated attempts they made through the years to obtain some assistance from defendants, defendants refusals to conduct a criminal investigation at any time, including the most recent letters from each defendant dated in September of 1994, April and August of 1995, and November of 1997, were continual, contributory and retaliatory, tortuous actions designed to help carry out the object of the conspiracy to violate Plaintiffs' civil rights on July 21, 1997, and to further allow future discrimination and violations against Plaintiffs because of their false reputation of "having a run-in with authorities" over this real estate problem and who they were as public figures involved with said public dispute over said real estate, and was intended to deny them their equal rights and privileges as citizens to petition their government for their grievances, and their right of equal protection and due process of the laws and, and designed to force them to live elsewhere against their will in violation of their First, Fifth, Thirteenth, and Fourteenth Amendments, and was intended to stir-up future violence

000005

against Plaintiffs and to cause them foreseeable and
irreparable future harm and injury.

22. As a direct and proximate result of Defendants
negligent acts above, Plaintiffs did suffer losses as a
result of interferences with their Person, Reputation,
Privacy, Peace of Mind, Freedom of Movement, Right to Work,
Misuse of Legal Process, and all Constitutional Amendments
of both the State and Federal constitution complained of.

23. As a further direct and proximate result of
Defendants negligent acts above, Plaintiffs' suffered
criminal offenses against them of Conspiracy, Attempted
Murder, First Degree Assault and Battery, Contempt, Perjury,
Extortion, Libel, Slander, Misconduct in Office, Obstruction
of Justice, and Disturbing the Peace.

24. As a further direct and proximate result of
Defendants negligent acts above, Plaintiffs' Property Rights
suffered losses as a result of Nuisances, Trespass and Not
being able to keep others off, Misuse of Personal Property,
Adverse Possession, Arson, Vandalism, Burglary, Larceny,
Interference with Contractual and Business Relationships,
Obtaining Property by False Pretense, Fraud, Deceit,
Misrepresentation and Conspiracy.

25. Wherefore, Plaintiff demands judgment against each
Defendant Agencies and Employees for their aforesaid
conduct, which violated Plaintiff's civil rights, in the sum
of Five Hundred Thousand Dollars ($500,000.00) together with
interest and costs. Plaintiff are further entitled to
punitive damages and injunctive relief requiring said State
and Federal Justice Departments to complete a proper and
thorough investigation of this matter, and respond to
Plaintiffs' most recent complaints.

Count II: First, Fourth, Fifth, Thirteenth, and Fourteenth
    Amendments, and 42 U.S.C. Section 1983, 1985(3), 1986.

26. By virtue of the fiduciary deed of Emanuel M.
Gerwertz, Executor under the will of Marjorie MacLaughlin,
dated September 26, 1968, and recorded October 1, 1968, at
Book 786, Page 275, fee simple title to a historical
unsurveyed Farm in Marlborough, NH was vested in Theodore R.
Veale and Dorothy J. Veale, Plaintiffs parents. This is the
subject property of this action and is hereby collectively
referred to as the former "Gilbert Farm", and plaintiff's
"domicile" in Marlborough, NH.

27. On August 15, 1975, the New Hampshire State
Legislature enacted NH RSA 31:95-a, "Tax Maps", requiring
every city and town, prior to January 1, 1980, to have a tax
map drawn. Said tax maps were to fulfill a certain criteria
as specifically outlined under the statute, most

000006

importantly, said tax maps were to show the boundary lines of each parcel of land in town and accurately represent the physical location of each parcel of land in the town.

28.    During the 1960's, the defendant, Town of Marlborough, NH sold and issued to several people, tax deeds to vacant property originally belonging to the "Veale Estate" described above that was located within the immediate 100 acres of Plaintiffs' 1975 survey of 39 acres.

29.    The purpose of said tax deeds was to cause the immediate area around said survey to be inhabited by 1968 and by the time Plaintiffs, and their family, moved onto said Farm which at that time was not yet surveyed, and to deceive the Plaintiffs and their family concerning the true boundaries of said Farm through the unlawful trespass and misrepresentation of said property by taxes.

30.    Thereafter, several people began taking possession of said property and building houses upon said vacant land, and the defendant began receiving and accepting fraudulent tax money for said property as income for the town.

31.    In 1975-76 defendant, Town of Marlborough, organized a Town meeting without the knowledge of Plaintiffs or their Family, and without any accurate surveys, thereafter developed erroneous tax maps that were consistent with the then disputed 1975-76 (39-acre) survey of Plaintiffs' Farm, without first taking into account the ancient history, information, and full wording and meaning of the description of Plaintiffs' 1892 Deed to their Farm, before completing said tax maps which deprived Plaintiffs' Family of their property rights and allowed others to begin claiming Plaintiffs' extra land through tax fraud.

32.    In November of 1980, Plaintiffs discovered the flaws in their 1975-76 survey of 39-acres while they were still living on some of the remaining surveyed land.

33.    Thereafter, Plaintiffs received as compensation from their parents, a future equitable contract for deed to the "extra" land Plaintiffs had found located outside of the 39-acre survey, contingent upon clearing-up the title first.

34.    To those ends, Plaintiffs began hiring a string of lawyers and surveyors to assist them in correcting the survey and title errors and preparing a full title report and survey of their Farm to clear up the title for conveyance purposes and to present the completed work to the defendant so to have them correct their Town Tax Maps to indicate Plaintiffs as the true owners of said vacant land.

35.    By Letter dated in August of 1982, Plaintiffs and their family, notified the defendant, Town of Marlborough,

000007

about their discovery of the survey errors and requested the defendant help them in resolving the matter amicably.

36.    Instead, and as part of the object of the conspiracy to violate Plaintiffs' constitutional rights regarding said extra property, the defendant Selectmen of Marlborough failed and neglected to do anything about correcting the errors in their tax maps based upon the information provided by Plaintiffs, and did not respond to said Letter of 1982 so to intentionally cause further future delay, hardship, and unlawful deprivation to the Plaintiffs and their family when they tried to settle the matter later.

37.    In furtherance of the above-described conspiracy, defendants began to discriminate against plaintiffs in late 1979 during an incident on Water Street at the "Old Trestle" where defendant Marlborough Police Officers singled Plaintiffs out of a group and began illegally harassing them for allegedly violating under-age drinking laws while letting the other citizens go free, when Plaintiffs were not guilty of the offense.  Defendants violated Plaintiffs civil rights under color of state law here in order to threaten and intimidate them further while they continued to exercise their rights to live on and protect their land in Marlborough and pursue the settlement of their land claims.

38.    In furtherance of the above-described conspiracy, on or about April 15, 1981 Plaintiffs were criminally threatened and assaulted on Public Property by certain Marlborough residents in violation of their civil rights. Thereafter, Plaintiffs immediately confronted, Defendant Marlborough Selectmen, Police Department and Police Chief David E. Cheney who, apparently was watching the entire situation from his automobile parked at a nearby location. Although Plaintiffs approached the Defendant and repeatedly knocked on his car window requesting assistance, Defendant refused to speak with Plaintiffs in violation of their rights to the Equal Protection of the Laws.

39.    Thereafter, Plaintiffs drove to the center of Marlborough where they confronted four other defendant Marlborough Police Officers in front of the Police and Fire Station.  Plaintiffs' assailants followed them there and immediately in front of the four Police Officers, Plaintiff David Veale was assaulted again by one of the assailants. Defendant, Marlborough Police Department, watched the entire episode and again refused to afford Plaintiffs their rights to the Equal Protection of the Laws.

40.    Thereafter, Defendant Police Chief Peter Henry who, under the circumstances, did not have an objective, good-faith belief that Plaintiffs were not in immediate danger, ordered Plaintiffs to leave the Town of Marlborough forthwith.  While getting back into their car, Plaintiff

000008

Scott Veale, verbally thanked the Police Chief for his lack
of assistance and was thereafter placed under arrest,
handcuffed and put in the back of the Marlborough Police
cruiser in violation of Plaintiffs civil rights.
Approximately 15 minutes later, Defendant Police Chief
released Plaintiff providing they left town immediately.

41.  As a result, upon leaving the town limits of
Marlborough, Plaintiffs' vehicle was struck from the rear
and forced off the highway by the same assailants who
assaulted them in the presence of the aforesaid defendant
Marlborough Police Department, and nothing was ever done in
violation of Plaintiffs' rights of equal protection.

42.  Plaintiffs allege that they were denied the Equal
Protection of the Laws by said Defendant Police Department
who, under the facts available, did not have an objective,
good-faith belief that Plaintiffs' assailants were not
violating the law.  Plaintiffs further allege that such lack
of assistance from the Defendant Police Department was in
furtherance of the above-described conspiracy and in
violation of plaintiffs rights under the Fourth, Fifth,
Thirteenth, and Fourteenth Amendments and the equal
protection and due process of the law.

43.  Plaintiffs allege that the denial of their right
to the equal protection of the laws by Defendant was
motivated by group animus designed to invidiously
discriminate against Plaintiffs because of their knowledge,
belief and possession of certain findings and facts relating
to their real estate dispute between Plaintiffs and certain
other Marlborough citizens group of adverse landowners whom
were attempting to claim some of Plaintiff's land, and
because of their false reputation of having a "run-in with
authorities", as part of the above-described conspiracy,
without Plaintiffs' knowledge.

44.  Plaintiffs further allege that said invidious
discrimination against them by the Defendant, Marlborough
Police Department, was ordered by the Selectmen and
motivated by group animus from their office with a purpose
and intent to make Plaintiffs feel uncomfortable and
unwanted in Marlborough and otherwise deprive them of their
equal rights and privileges as afforded other citizens.

45.  In November, 1982, Plaintiffs sought to locate
their mobile home onto [their] surveyed property for the
purpose of protecting and defending the same, and confronted
defendant, Former Marlborough Selectmen, Russell, Southwell
and Williams, for advice and a building permit application.

46.  In furtherance of the above conspiracy, and lack
of assistance from the above Defendants, U.S. and N.H.
Attorney Generals Offices alleged in Count 1 above,

000009

Defendants, Former Marlborough Selectmen, conspired to
further discriminated against the Plaintiffs because of who
they were as public figures involved with said public real
estate dispute, and singled them out by giving them poor
advice and otherwise denying them the right to file any
application form, by refusing to issue to them, a blank
application form.

47.  As part of the conspiracy, Defendants, former
selectmen, singled Plaintiffs out and told them that zoning
did not allow the placement of their mobile home in
Marlborough, although the local zoning did allow for it.

48.  As a direct and proximate result of defendants
failure to issue Plaintiffs a blank application, Plaintiffs
were further denied their equal rights as citizens under the
Fifth and Fourteenth Amendments to the equal protection of
the laws and due process, by denying Plaintiffs their right
to process a building permit application as is afforded
other citizens.  Defendants acts further denied Plaintiffs
their right to acquire, protect, and enjoy [their] property
including the use and benefit of [their] home and extra
property described in their families' title, to this date,
without 'the proper notice or the right to be heard, prior to
the unlawful taking and deprivation of the same.

49.  Plaintiffs allege that, here and through repeated
attempts Plaintiffs made through the years to obtain some
assistance from defendants, defendants refusals to issue
Plaintiffs building permit applications or allow them to
place their Mobile Home or Airstream Camper on [their]
properties, constituted continual, contributory, and
retaliatory tortuous actions designed to violate Plaintiffs'
civil rights and discriminate against them through the years
because of who they were as public figures involved with
said public dispute over said real estate, and aimed at
denying them their equal rights as citizens to petition
their government for their grievances, and their right of
equal protection and due process of the laws, and designed
to force Plaintiffs to live elsewhere against their will in
violation of their First, Fifth, Thirteenth, and Fourteenth
Amendments to the U.S. Constitution, and was intended to
stir-up future violence against Plaintiffs and to cause them
foreseeable and irreparable future harm and injury.

50.  In furtherance of the above-described conspiracy,
on October 6, 1984 Plaintiffs allege they were falsely cited
by Defendant, Former Marlborough Selectmen Wheeler, and
charged under RSA Chapters 672 through 677 with violations
of the Ordinances of the Town of Marlborough while living in
their mobile home on their surveyed property.

51.  At a preliminary hearing on the aforementioned
charges Plaintiffs were represented by N.H. Legal Assistance

000010

and prohibited from going before the Presiding Justice by
mis-representations made at court by defendant former
counsel, Thomas R. Hanna, Esq., pertaining to the applicable
zoning laws, as an act in furtherance of the above-described
conspiracy to deny plaintiffs access to the courts, obstruct
justice, and deprive them of their right to claim their
property as their domicile for residential and voting
purposes and their rights to protect and defend their Farm.

52.  Later, and without affording Plaintiffs a hearing
on the matter, Defendants Nol Processed the aforementioned
complaints after discovering Plaintiffs intentions of filing
a Counterclaim against the Defendant, after the N.H. Legal
Assistance refused to further represent plaintiffs due to
the mis-representations by defendant former counsel – that
plaintiffs mobile home violated the local zoning ordinances
of Marlborough, when in fact, it didn't.  Plaintiffs were
then discharged without a Court hearing and no further
charges were ever brought by defendant with respect to
Plaintiff's mobile home under the zoning laws.

53.  Plaintiffs allege they were wrongfully cited for
violation of the local zoning ordinances without probable
cause by Defendant, through the assistance and mis-
representations of their attorney, pursuant to their
customary zoning laws who, under the facts available, did
not have an objective, good-faith belief that Plaintiffs
were guilty of the offense charged and in violation of
zoning.  Plaintiffs further allege that said citations were
made as a pattern of intentional harassment and with the
intent to carry out the above-described conspiracy with the
main objective to wrongfully injure, threaten, oppress and
intimidate Plaintiffs in their free exercise, use, and
enjoyment of their property rights in violation of their
rights under the United States Constitution to freedom of
Speech and Right to access the Courts, to be free from
unreasonable arrest, and their right to the due process and
equal protection of the laws.  Plaintiffs citation was made
under color of RSA Chapters 672 through 677 and under color
of authority of Defendant as a Selectmen for the Town of
Marlborough.

54.  Thereafter, Plaintiffs allege defendant was
forever precluded from raising a claim against Plaintiffs
for violation of zoning with respect to their mobile home by
virtue of the doctrine of res judicata.

55.  In furtherance of the above-described conspiracy,
and upon information and belief, on or about November 15,
1984 Defendant Marlborough through their Dog Officer, now
deceased, received certain phone calls from certain
Marlborough citizens group of adverse landowners complaining
that Plaintiffs' dogs were in violation of the Leash Law and
that one of them bit a nearby resident when he tried to

enter Plaintiffs' mobile home without their persmission. As
of a result, Defendant Dog Officer entered Plaintiffs'
property without Plaintiffs knowledge or consent, and with
the assistance of certain neighbors, kidnapped Plaintiffs'
male Doberman Pincher and permanently deprived Plaintiffs of
said animal. Plaintiffs' three other dogs were left
untouched. Plaintiffs never saw their male Doberman Pincher
again and were permanently deprived of said protection dog
by the Defendant without just compensation in violation of
their rights under the United States Constitution to Equal
Protection and Due Process of the Law.

56. Plaintiffs allege that their Dog was taken without
probable cause by Defendant who, under the facts available,
did not have an objective, good-faith belief that
Plaintiffs' Dog was in violation of the law and posed any
danger to anyone who did not try to enter Plaintiffs'
property without their consent, nor did Defendant have the
right or authority to commit theft, kidnapping, and murder,
of Plaintiffs' Dog without first confronting Plaintiffs with
the alleged complaints. Plaintiffs allege that such
deprivation of their protection animal was in violation of
their aforesaid Constitutional rights under the Fourth,
fifth, and Fourteenth Amendments of the United States
Constitution and in violation of applicable criminal law.

57. Plaintiff's Doberman Pincher was taken by the
Defendant under color of RSA Laws and under color of the
authority of Defendant as the Town of Marlborough.

58. In furtherance of the above-described conspiracy,
on May 10, 1985, Plaintiffs, were unlawfully arrested by
Defendant, Marlborough Police Department and Police Officer
Albion E. Metcalf, now deceased, while in the performance of
their self-employment work, and charged under NH RSA 637:3
with Theft by Unauthorized Taking for cutting and removing
certain Red Oak Trees in Marlborough which Plaintiffs
contested belonged to them.

59. Defendants thereafter committed theft and
extortion when they unlawfully seized and confiscated
Plaintiffs' Red Oak Logs and transported them to a distant
sawmill where they were sold and cut without Plaintiffs
knowledge or consent. Defendants then received the money
from said stolen Logs and divided it among themselves as
income. Plaintiffs were then falsely arrested and
criminally prosecuted before a partial Judge in the Keene
District Court by Defendants where they were later denied
their constitutional right to the freedom of speech and
access to the courts, a fair trial by jury, and due process
and equal protection of the laws, as they were forced to
accept under duress, a guilty finding under a plea bargain
which denied them their constitutional right to transfer the
case to the state superior court for a trial by jury and

000012

claim they owned the land where the logs wee cut from and
raise the merits of the underlying land dispute within the
context of said criminal proceedings as part of their
adequate defense at trial.

  60. In furtherance of said conspiracy, Plaintiffs were
advised by the Public Defenders Office to enter a Nolo Pleas
as part of the Plea Bargain and told they were not going to
be allowed to have the Court address their real estate
dispute as part of their plea and defense. The Keene
District Court, J. Richard Talbot, then, acting outside of
his jurisdiction, abused his discretion over the subject
matter and ruled on the pending charges without addressing
the real estate issues raised in Plaintiffs' defense
alleging their ownership rights to their property. The
Court wrongfully found the Plaintiffs guilty of the criminal
offenses charged, as a result of the defendants acts to
misrepresent plaintiffs rights of property ownership, all in
furtherance of the above-described conspiracy to violate
Plaintiffs' constitutional rights.

  61. Plaintiffs allege as of a result, they were
wrongfully arrested without probable cause by Defendant
pursuant to the aforesaid official customary tax maps
developed in 1980 by Defendant who, under the facts
available, did not have an objective, good-faith belief
that Plaintiffs were guilty of the offense charged, because
of Defendants previous knowledge of Plaintiffs' good-faith
belief that they had superior title to the subject property
in question and defendants' knowledge that the plaintiffs'
acts were within their constitutional rights to the free
exercise and enjoyment of their property they believed they
rightfully owned.

  62. Plaintiffs allege said arrest and prosecution was
therefore in violation of Plaintiffs' rights under the
First, Fourth, Fifth, Seventh and Fourteenth Amendments of
the United States Constitution to Free Speech, to be free
from unreasonable arrests and seizures, and of their rights
of equal protection and due process of law, and an impartial
trial. Plaintiff's arrest was made under color of state law
NH RSA 637:3 and under the color of the authority of
Defendants as selectmen and police department for the Town
of Marlborough, New Hampshire.

  63. In furtherance of the above-described conspiracy,
on or about February 20, 1986 Plaintiffs were wrongfully
denied their right to register their motor vehicles and vote
in the Town of Marlborough by the Defendant, Marlborough
Selectmen, in violation of Plaintiffs' civil rights.

  64. On or about February 28, 1986 Plaintiffs were
forced to file an action in the State Superior Court under
RSA 654:42 to secure their voting rights and after a

preliminary hearing, obtained an order requiring the
Defendant to place Plaintiffs on the voter checklist and
allow them to vote and claim their mobile home on their Farm
in Marlborough, New Hampshire as their domicile. Thereafter
defendant also allowed Plaintiffs to register their motor
equal protection, and their claimed right to vote in
Marlborough. Defendants denied Plaintiffs their right to
vote under color of RSA 654:1 and under color of the
authority of Defendant as Selectmen and Supervisors of the
voter checklist for the Town of Marlborough, New Hampshire.

86.  In furtherance of the above-described conspiracy,
on April 29, 1986 Plaintiffs were falsely arrested by
Defendant, Marlborough Police Department and Officer Albion
E. Metcalf, now deceased, under NH RSA 631:4 ld and charged
with Criminal Threatening for allegedly making verbal
threats to shoot the tires off of a certain tow truck which
the Police Department threatened to use to remove one of
Plaintiffs' vehicles from [their] extra property.

87.  At a preliminary hearing held on or about
September 5, 1986 on said complaint, Plaintiffs were
discharged.  At another preliminary hearing held on October
10, 1986 these charges were maliciously brought again
against the Plaintiffs.  At that point plaintiffs requested
their right to the assistance of Court appointed Counsel to
assist them in the preparation of their defense before being
tried on the offenses and were wrongfully found in direct
criminal contempt of court and unlawfully incarcerated for
requesting a continuance to do so.

88.  Plaintiffs were then transported to the Cheshire
County House of Correction where they spent over five days
in jail until they were later released on a writ of Habeas
Corpus filed October 15, 1986.

89.  At a trial by jury on the aforementioned criminal
charges, Plaintiffs were found not guilty by the jury.

Page - 14

000014

# EXHIBIT C

**U.S. District Court**
**District of New Hampshire**
**September 1, 1999 Order**
**Dismissing the Veales' Amended Complaint**

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

SEP 1 4 24 PM '99

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

David Veale;
Scott Veale,
    Plaintiffs

    v.                            Civil No. 98-441-M

United States of America; United States
Attorneys Office; U.S. Supreme Court;
U.S. First Circuit Court of Appeals;
U.S. Bankruptcy Court; U.S. District
Court for N.H.; State of N.H.; N.H.
Attorney Generals Office; N.H. Supreme
Court; Cheshire and Hillsborough County
Superior Courts; Concord, Hillsborough,
and Keene District Courts; N.H. State
Police Officers and Department of
Transportation; Swanzey and Keene Police
Departments; Towns of Marlborough,
Bennington, and Gilsum, N.H.; All Former
Marlborough Selectmen Since 1980 and
Respective Police and Fire Departments;
Keene Publishing Corporation; Previous
N.H. Attorneys and Surveyors; Former
Legal Counsel for the Towns of Marlborough
and Bennington, N.H.; and All Named
Abutters on Survey of Plaintiffs' Farm
    Defendants

**O R D E R**

    Plaintiffs' amended complaint consumes some 58 pages and 256

paragraphs. To say they are veteran pro se litigants does them

the disservice of understating their preoccupation, for as

000063

plaintiffs themselves confirm (See Exhibit 1 to their amended
complaint), they have initiated or been party to some 89 separate
cases in state and federal court from 1982 through last November.
Virtually all of those cases concern, or arise from, or are said
to relate to plaintiffs' unswerving belief that a vast and all-
encompassing conspiracy exists, singularly devoted to depriving
them of their rights to property in the Town of Marlborough, and
visiting upon them every conceivable type of legal injury to
punish them for pursuing those claimed property rights.

It hardly seems worthwhile or productive to try to summarize
the long history and literally scores of lawsuits filed by
plaintiffs over the years that in one way or another arise from
their incorrect and long since resolved claim that they possess
ownership rights to land in Marlborough, New Hampshire. It also
seems hardly worthwhile to devote the time necessary to recount
the holdings in many prior state and federal cases involving all
of the same basic claims raised in plaintiffs' latest amended
complaint in this particular case.

The amended complaint is perhaps a testament to plaintiffs'
commitment and imagination, but in reality it is little more than
a stream of consciousness reiteration of old and already resolved

2

000064

conspiracy theories, land claims, surveyor and lawyer malpractice claims, meritless causes of action, fantastic and conclusory allegations, and nearly unintelligible legal theories, all seemingly designed to perpetuate a legal quest that has consumed these plaintiffs and occupied numerous defendants, and the courts, for far too long. Ordinarily, pro se litigants ought to be given an understandable, even a detailed, explanation of why their claims are without legal merit before their causes of action are dismissed. But these plaintiffs have already been given those explanations, and their litigation history makes it plain that to do so again would merely duplicate past judicial efforts, with virtually no hope that plaintiffs will either understand or accept that they cannot continue to relitigate these identical and poorly disguised claims over and over.

At this point it is enough to say, with only the briefest explanation, that plaintiffs' amended complaint is fatally defective with respect to each of the numerous claims described in it for one or more of the following reasons: the identifiable claims are generally not sufficiently supported by factual allegations; the basic claims of conspiracy are bizarre, fantastical, frivolous, unsupported, and barred by the doctrine

3

000065

of res judicata, the related doctrine of collateral estoppel, the

applicable statute of limitations, and various types of immunity.

To the extent rambling references are made to past specific

complaints (regarding, for example, zoning issues, pistol

permits, mobile home seizures, local voting rights, car

registrations, land rights, failure of officials and prosecutors

to investigate or take action on complaints, malpractice of

various sorts, denials of due process, "illegal" court

resolutions of prior cases, and claimed official harassment of

various types), those issues have also either been finally

adjudicated and cannot be revisited here given the doctrines of

res judicata and collateral estoppel, or are facially barred by

the applicable statute of limitations, or involve matters over

which this court has no jurisdiction (i.e., review of state court

final judgments), or are barred by absolute judicial and

prosecutorial immunity, or improperly seek to recover from

defendants who are not "persons" within the meaning of 42 U.S.C.

§ 1983, or are precluded by plaintiffs' failure to exhaust

administrative remedies (e.g., the Federal Tort Claims Act), or

fail to state claims upon which relief can be granted, or are

simply not coherent to the degree required for serious

4

consideration in that they fail to make it reasonably clear just what facts are being alleged against what defendants to support what legal theory of recovery (indeed it is nearly impossible to determine even the identity of all the defendants plaintiffs apparently intend to sue).

A Fair Reading of the Complaint

A fair reading of this unwieldy amended complaint, that is, looking beyond the literal meaning of the language used to ascertain the real cause of the complaint,[1] suggests that plaintiffs' claims can be generally categorized as follows:

1.   Defendants engaged in (and continue to engage in) a vast and evolving conspiracy to deprive them of property rights in various towns, and to generally harass them by denying them due process and by interfering with their daily lives in innumerable ways to punish them for having pursued their claims (Counts 2, 7, 8, 9, and 12);

2.   Some Defendants wrongfully failed to entertain their various complaints about conspiracy, etc., over the years and

---

[1]   See Jimenez-Nieves v. United States, 682 F.2d 1, 6 (1st Cir. 1982).

5

000067

failed to prosecute or take other investigative action relative
to those complaints (Count 1);

    3.    Some Defendants committed criminal violations for which
plaintiffs seek civil damages (Count 10);

    4.    Some Defendants, the town defendants primarily,
violated various zoning ordinances and related statutes in
denying plaintiffs the right to deal with their properties as
they wished (Counts 3, 4); and

    5.    Various Defendants are liable to them under several
state law causes of action (Counts 5, 6, 11, 13 (mislabeled as a
second "12")).

<u>The Grand Conspiracy Claims</u>

    There are three fundamental problems with these claims.
First, they have already been adjudicated on the merits in one
form or another (several times it appears).  Second, it is plain
from the amended complaint that virtually all of the occurrences
alleged to have been in furtherance of the alleged conspiracy
took place, as did the formation and operation of the alleged
conspiracy itself, before at least 1990.  So, those claims are
barred by the applicable statute of limitations.  <u>See</u> N.H. Rev.

000068

Stat. Ann. 504:6 (3 years).  Third, the allegations of conspiracy

are not supported by material factual allegations, but consist of

wholly conclusory statements.

These plaintiffs previously brought the very same vast

conspiracy claims in this court in <u>Veale v. Town of Marlborough,</u>

<u>et al.</u>, Civ. 90-37-SD (D.N.H.).  In that case, Judge Devine noted

that:

>       Pro se plaintiffs Scott and David Veale bring this
> civil rights action against the Town of Marlborough,
> New Hampshire, and various other defendants alleging
> the existence of a vast conspiracy to deprive them of
> their constitutionally protected property rights.

>       Presently before the court is plaintiffs'
> objection to the magistrate judge's March 11, 1991,
> Report & Recommendation which recommended that this
> action be dismissed.  [footnote omitted]

>                    *    *    *

>       In his Report & Recommendation of March 11, 1991,
> the magistrate judge thoroughly reviewed plaintiffs'
> various claims and properly concluded as a matter of
> law that plaintiffs fail to state a claim under 42
> U.S.C. 1983, 1985(3), and 1986. Specifically, the
> magistrate judge concluded that certain named
> defendants are entitled to absolute immunity;
> plaintiffs have failed to allege any constitutionally
> recognized class-based discrimination; plaintiffs have
> failed to plead facts sufficient to support a section
> 1983 claim against state and local officials; and,
> notwithstanding flaws in their pleadings, plaintiffs
> could not prevail on their due process claim since it
> is undisputed that they were given notice and an

7

opportunity to be heard before their mobile home was taken.

The court herein addresses the issues raised by plaintiffs' numerous objections to the March 11, 1991, Report and Recommendation and concludes that they are meritless.

Order, July 10, 1991 (copy attached). (A copy of the referenced

Report and Recommendation is also attached to this order.) All

of plaintiffs' claims, including their conspiracy claims, were

dismissed with prejudice, and that result became final. See

Veale v. Town of Marlborough, 993 F.2d 1531 (1st Cir. 1993)

(unpublished). If that were not enough, it seems plaintiffs

also raised substantively identical conspiracy claims in state

court, and those were also resolved against them on the merits.

See Town of Marlborough v. Scott W. and David T. Veale, No. 90-E-

130, New Hampshire Superior Court (Cheshire County), Order of

July 29, 1992 at 6 (Exhibit F to Marlborough Defendants' motion

to dismiss, document no. 10) ("In their counterclaim, defendants

seek damages from plaintiff for 'an underlying secret scheme

developed by the Town . . . to deprive [defendants] of their

property described within their deeds', for harassment, and for

bad faith conduct. Defendants failed to prove these claims at

the hearing, and their counterclaim is DENIED.") (emphasis in

8

000070

original).  Undeterred, plaintiffs brought virtually identical
conspiracy and related claims in another case filed in this court
(Veale v. Town of Marlborough, et al., Civ 92-355-SD), with the
same result.  And, of course, the same basic claims are repeated
in one form or another in many other cases filed by plaintiffs.

The claims made here have been resolved before and, as
before, the conspiracy claim fails because, inter alia, it is not
pled with the requisite degree of specificity.  As the First
Circuit has stated, "Though we are mindful that pro se complaints
are to be read generously, . . . allegations of conspiracy must
nevertheless be supported by material facts, not merely
conclusory statements." Slotnick v. Garfinkle, 632 F.2d 162, 165
(1st Cir. 1980) (citations omitted).  The latest amended
complaint by plaintiffs is not supported by allegations of
relevant material facts, but, as before, merely strings together
broad conclusory statements.  Accordingly, the grand conspiracy
claims are necessarily dismissed because they have been
previously adjudicated, because they are not adequately supported
by factual pleading, and because they are time-barred and, as to
particular defendants, barred by immunity doctrines, or are
otherwise meritless for the reasons summarized above, and for the

9

000071

many reasons articulated in Defendants' pending motions to
dismiss and supporting memoranda.

## Failure to Investigate or Prosecute Others (Count 1)

Plaintiffs simply have no cognizable or enforceable right to
an investigation or prosecution of others merely because they
bring complaints to the attention of state or federal officials.
Count 1 does not state a cause of action upon which relief may be
granted.  See e.g. Linda R.S. v. Richard D., 410 U.S. 614, 619
(1973); Leeke v.Timmerman, 454 U.S. 83, 86-87 (1982); Nieves-
Ramos v. Gonzalez-De-Rodriquez, 737 F.Supp. 727, 728 (D.P.R.
1990).

## Claims Seeking to Enforce Criminal Laws

Plaintiffs, as they have been told previously, lack standing
to bring suit to enforce criminal laws and, to the extent they
vaguely hint at a possible civil RICO action, they fail to state
a claim upon which relief can be granted.  See Order dated July
10, 1991, Civ. 90-37-SD, supra, at 8 (". . . plaintiffs have no
standing to sue for violations of federal criminal laws").

10

000072

Zoning Related Claims (Counts 3, 4)

Plaintiffs repeatedly allude to various zoning-related claims, all of which seem to have been raised and finally adjudicated in prior cases. In any event, the Court of Appeals has made it quite clear that federal courts will not sit as super zoning boards or zoning boards of appeal, nor will complaints arising from local zoning disputes normally state a viable claim under section 1983. See Raskiewicz v. Town of New Boston, 745 F.2d 38, 44 (1st Cir. 1985); see also Chiplin Enterprises, Inc. v. City of Lebanon, 712 F.2d 1184 (1st Cir. 1983). Absent "fundamental procedural irregularity, racial animus or the like," actions by a local zoning board will not "engage the heavy-duty machinery of the Civil Rights Act," nor will such actions "implicate the Constitution". Chongris v. Board of Appeals of Town of Andover, 811 F.2d 36, 42 (1st Cir. 1987)(citing Creative Environments v. Estabrook, 680 F.2d 822, 833 (1st Cir. 1982)).

State Claims (Counts 5, 6, 11, 13)

In these counts, plaintiffs seem to advance theories of negligence (in general), malpractice by a host of previously retained attorneys and land surveyors, and various liability

11

theories based upon the New Hampshire Constitution.  These claims
are fatally defective for a multitude of reasons as well, and
they also appear to have been litigated before.  Nevertheless, it
is sufficient to say that since no viable federal causes of
action exist, this court will not exercise supplemental
jurisdiction over any remaining state claims.  <u>See</u> 28 U.S.C.
§ 1367(c)(3).  Those claims are, therefore, dismissed without
prejudice.


### Protective Relief

One further matter needs to be addressed.  Defendants have
requested this court to enjoin plaintiffs (as they have already
been enjoined in state court, <u>see</u> <u>Veale v. Town of Marlborough,</u>
<u>et al.</u>, 95-E-82, New Hampshire Superior Court (Cheshire County),
from filing further actions without a showing of good cause.
There can be little doubt that the allegations in this case are
in substance an accumulation and reiteration of past complaints −
pieces of the some eighty or more cases filed by plaintiffs
individually or jointly − and neither the defendants nor the
court can reasonably be expected to patiently entertain these
repetitive suits forever.

12

000074

conspiracy claims, or other claims, raising matters
previously litigated, particularly concerning the
alleged conspiracy to deprive them of claimed rights to
property in the Town of Marlborough, without first
obtaining leave from this court.  All future filings by
these plaintiffs <u>must</u> be accompanied by a motion for
leave to file which shall clearly and concisely state
how the subject matter of the proposed suit differs
from, or why it is unrelated to, the subject matter of
previous litigation instituted by them, or either of
them, in federal or state court.  Should it appear that
a proposed action is repetitive, meritless, frivolous,
malicious, intended to harass, delusional, or legally
barred, leave to file will be denied. Should
plaintiffs' motion for leave to file fail to meet the
"clear and concise statement" test, it will be denied.
The Clerk is directed to present all new filings by
these plaintiffs to the undersigned judge for review of
the required motion for leave to file.  If leave to
file is granted, the case will be assigned randomly in
the usual course.

<u>Conclusion</u>

Without belaboring the matter any further, defendants'

pending motions to dismiss are granted, plaintiffs' amended

complaint is dismissed with prejudice with regard to all federal

13

000075

claims for the reasons given and for the reasons set forth in the

various defendants' motions to dismiss and supporting memoranda,

and all state claims are dismissed without prejudice.


**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

September 1, 1999

cc:  Scott W. Veale
     David T. Veale
     T. David Plourde, Esq.
     Martha A. Moore, Esq.
     David P. Slawsky, Esq.

14

# EXHIBIT D

**U.S. District Court
District of Vermont
February 23, 2006 Opinion and Order
Dismissing David Veale's Complaint**

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

David T. Veale,               :
        Plaintiff,            :
                              :
                              :
    v.                        :    File No. 1:05-CV-105
                              :
United States of America      :
Department of Justice,        :
Anne E. Edwards, Brad W.      :
Simpkins, Unknown State       :
Police Officer from Troop     :
B, New Hampshire Attorney     :
General's Office,             :
Department of Resources       :
and Economic Development,     :
New Hampshire State Police    :
Troop C,                      :
        Defendants.           :

OPINION AND ORDER
(Papers 16, 18, 24 and 32)

    This case arises out of plaintiff David Veale's

contention that he and his brother, Scott Veale, have been

wrongfully barred from using property that they allegedly own

in Bennington, New Hampshire.  The Veales have a long history

of disputes with local, state and federal officials with

respect to this and similar claims.[1]  Here, the Veales have

sued a group of New Hampshire state defendants ("State

---

    [1]    Judge McAuliffe of the U.S. District Court for the
District of New Hampshire wrote in a 1999 opinion that the
Veales had "initiated or been party to some 89 separate cases
in state and federal court from 1982 through [November, 1998].
Virtually all of these cases concern, or arise from, or are
said to relate to [the Veales'] unswerving belief that a vast
and all-encompassing conspiracy exists, singularly devoted to
depriving them of their rights to property . . . and visiting
upon them every conceivable type of legal injury to punish
them for pursuing those claimed property rights."  Veale v.
United States et al., 1999 WL 814334, at *1 (D.N.H. Sept. 1,
1999).

Defendants"), as well as the United States Department of
Justice and, arguably, various other federal actors ("Federal
Defendants").   The State Defendants have moved to dismiss for
lack of personal jurisdiction and improper venue.   (Paper 32).
The Federal Defendants have also moved to dismiss, arguing res
judicata, collateral estoppel, and lack of subject matter
jurisdiction.   (Paper 24).   For the reasons set forth below,
the motions to dismiss are GRANTED, and all remaining motions
are DENIED.

Factual Background

For purposes of the pending motions, the factual
allegations set forth in the complaint will be accepted as
true.   In 1978, Veale's parents acquired a 75 acre parcel of
property in Bennington, New Hampshire.   Since that time, Veale
"has always lived on and remained in exclusive possession of
the above-referenced 75 acres of property with his family,
during which time he cut, harvested, and managed his own
forestland as a means of self-employment."   (Paper 4 at 3).
In the spring of 1998, Veale learned that his neighbor, Lloyd
Newhall, claimed a portion of the 75 acres.   In response,
Veale and his family posted "No Trespassing" signs on the
property and notified the Bennington Police Chief of the
postings.   The signs were subsequently removed by "defendant,
Dennis McKenney," who claimed that Veale did not own the land.
Id.

When Veale raised the matter of ownership with the Town of Bennington, he was informed that he owned only a five acre parcel. Veale was also told that his claim appeared to be "a civil matter concerning a boundary dispute between" he and his neighbor. Id. Veale contends that the Town of Bennington denied him his property without due process, and that Town officials failed in their duty to conduct surveys and correct their allegedly erroneous tax maps. Id. As a result of the Town's actions, Veale claims that he has been "deprived of his right and ability to continue owning and paying tax on his real property in Bennington, NH." Id. at 4.

In March 2000, New Hampshire officials issued cease and desist orders against Veale "attaching and seizing all wood plaintiff had cut down for himself, and ordered plaintiff to stop cutting, harvesting, and/or removing any more new wood from any of his Bennington property." Id. On June 21, 2001, defendant Anne Edwards, Senior Assistant Attorney General for the State of New Hampshire, commenced an equity action against David and Scott Veale in New Hampshire state court alleging violations of the cease and desist orders. On June 29, 2001, the state court issued an injunction barring the Veales from cutting or removing wood from the disputed property.

In August 2001, the Veales were notified by Forest Ranger Brad Simpkins that they would be criminally prosecuted if they continued to occupy or use the disputed property. On December

3

21, 2002, Simpkins and other law enforcement officials
appeared at the property and personally ordered the Veales to
refrain from using the acreage in question.  As with the
actions by Town officials, Veale claims that these law
enforcement activities deprived him of his "federally
protected property rights and ability to continue owning and
using his property and operating his wood business in
Bennington, NH without being afforded due process or equal
protection of the law."  Id. at 5.

On June 23, 2003, a New Hampshire state court grand jury
indicted Veale on charges of theft of timber and trespass.
Veale was subsequently appointed a public defender.  Veale
claims that the state court has denied his attorney's request
for leave to retain a land surveyor "as an expert witness in
preparation of his defense," and that defense attorneys
wrongfully allowed the state court to order a competency
evaluation of his brother.  Id. at 6.  The New Hampshire
criminal proceedings against Veale and his brother appear to
be still pending.

Veale asserts that all of the actions taken by state and
local officials "were motivated by group animus towards the
Plaintiff, with the intent to deprive him of his aforesaid
property rights, liberty, and life in New Hampshire."  Id.
With respect to the Federal Defendants, Veale claims that "the
defendant, United States, through its' [sic] N.H. Federal

4

Courts and Justice Departments, became aware of this wrongful

and unlawful conspiracy . . . and in breaching their duties

owed to the plaintiff, they perpetrated, instigated, and

condoned . . . events leading up to these alleged civil rights

violations." Id. at 2. Veale also refers the Court to a

separately filed action in which he seeks a writ of mandamus

compelling the federal government, including the New Hampshire

federal court, to uphold his constitutional rights. See Veale

v. United States, File No. 1:05-CV-104.

Because of the allegedly wrongful acts of the defendants,

Veale was eventually forced off of his land in New Hampshire

and compelled to move to Vermont. Veale has been a legal

resident of Vermont since 2004. (Paper 4 at 7). He filed the

instant action in April, 2005.

Discussion

I. Motion to Dismiss Standard

On a motion to dismiss, "a court has to consider the

legal sufficiency of the claim as stated in the complaint and

is not to weigh facts underlying the claim or the merits of

the case." Esden v. Bank of Boston, 5 F. Supp. 2d 214, 216

(D. Vt. 1998) (citing Goldman v. Belden, 754 F.2d 1059, 1067

(2d Cir. 1985)). "In ruling on such a motion, the court must

look only to the allegations in the complaint and any

documents attached to or incorporated by reference in the

complaint." Dangler v. New York City Off Track Betting Corp.,

5

193 F.3d 130, 138 (2d Cir. 1999).  Morever, when a motion to

dismiss is filed pursuant to Fed. R. Civ. P. 12(b)(6), the

court must assume all well-pleaded factual allegations to be

true and draw reasonable inferences in the light most

favorable to the plaintiff.  See Shakur v. Selsky, 391 F.3d

106, 112 (2d Cir. 2004); Bernheim v. Litt, 79 F.3d 318, 321

(2d Cir. 1996).  Dismissal is impermissible unless "it appears

beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief."

Flores v. S. Peru Copper Corp., 343 F.3d 140, 148 (2d Cir.

2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Similar to a motion for failure to state a claim under

Rule 12(b)(6), when a court reviews a motion for lack of

subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), it

accepts as true all material factual allegations in the

complaint.  Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l

Ltd., 968 F.2d 196, 198 (2d Cir. 1992) (internal citations

omitted).  The plaintiff bears the burden of proving by a

preponderance of the evidence that subject matter jurisdiction

exists, and "a district court may properly dismiss a case for

lack of subject matter jurisdiction under Rule 12(b)(1) if it

'lacks the statutory or constitutional power to adjudicate

it.'" Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d

635, 638 (2d Cir. 2005) (quoting Makarova v. United States,

201 F.3d 110, 113 (2d Cir. 2000)).  In contrast to a 12(b)(6)

6

motion for failure to state a claim, when deciding a 12(b)(1)
motion for dismissal based on lack of subject matter
jurisdiction, the court should not draw "argumentative
inferences" in favor of the party asserting jurisdiction.    See
Atlantic Mut., 968 F.2d at 198 (internal citations omitted).

On a motion to dismiss for lack of personal jurisdiction
filed pursuant to Rule 12(b)(2), the plaintiff again bears the
burden of showing jurisdiction.    See Ball v. Metallurgie
Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990),
cert. denied, 498 U.S. 854 (1990).    When no discovery has
taken place, the plaintiff need only make a prima facie
showing of jurisdiction by "pleading in good faith . . .
legally sufficient allegations of jurisdiction."    Jazini v.
Nissan Motor Co., 148 F.3d 181, 184 (2d Cir. 1998).    If
affidavits are submitted, the Court is to resolve factual
disputes in the plaintiff's favor.    See Whitaker v. American
Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).

II.    State Defendants' Motion to Dismiss

The New Hampshire State Defendants have moved to dismiss,
arguing lack of personal jurisdiction and improper venue.    In
support of their personal jurisdiction argument, the State
Defendants note that they themselves are all New Hampshire
residents, and that the events alleged in the complaint took
place exclusively in New Hampshire.    "The only contact with
Vermont is the fact that plaintiff currently resides there."

7

(Paper 33 at 4).  The State Defendants also assert that
Vermont has little policy interest in adjudicating this
dispute, and that they would be burdened by having to litigate
in Vermont when litigation in New Hampshire is ongoing.

Determining whether there is personal jurisdiction over a
defendant requires a two-part inquiry.  Metro. Life Ins. Co. v.
Robertson-Ceco, Corp., 84 F.3d 560, 567 (2d Cir. 1996);
Sollinger v. Nasco Int'l, Inc., 655 F. Supp. 1385, 1387 (D.
Vt. 1987).  First, the Court must review the forum state's
long-arm statute.  Bensusan Restaurant Corp. v. King, 126 F.3d
25, 27 (2d Cir. 1997).  If state law supports jurisdiction,
then the Court must review whether such jurisdiction violates
due process.  Id.  In Vermont, the long-arm statute allows
jurisdiction over defendants "to the full extent permitted by
the Due Process Clause."  Metro. Life, 84 F.3d at 567 (quoting
Bechard v. Constanzo, 810 F. Supp. 579, 582-83 (D. Vt. 1992)).
Therefore, the inquiry is simply whether jurisdiction over the
defendant comports with the standards of due process.  Id.

The due process analysis for personal jurisdiction also
has two parts.  First, the Court evaluates whether the
defendant has sufficient "minimum contacts" with the forum
state.  Id.  Second, if such contacts exist, the Court reviews
whether jurisdiction based on those contacts is "reasonable
under the circumstances of the particular case."  Id.  The
guiding principle in evaluating a defendant's contacts with

the forum state is that jurisdiction must be based on "some
act by which the defendant purposefully avails itself of the
privilege of conducting activities within the forum state thus
invoking the benefits and protections of its laws." Sollinger,
655 F. Supp. at 1387 (quoting Burger King Corp. v. Rudzewicz,
471 U.S. 462 (1985)). Jurisdiction based on such action is
justified because the defendant "should reasonably anticipate
being haled into court there." Artec Distrib., Inc. v. Video
Playback, Inc., 799 F. Supp. 1558, 1560 (D. Vt. 1992) (quoting
World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297
(1980)).

    In this case, the named defendants include Edwards,
Simpkins, an unknown state police officer, two state agencies,
and other "known and unknown defendants." (Paper 4).[2] There
is no indication in the complaint or supporting documents that
these defendants have had any contacts with the State of
Vermont. Indeed, it is clear from the allegations in the
complaint that all relevant events took place in New
Hampshire, and that the only connection to the State of
Vermont is the fact that Veale currently resides here.

    In response to the State Defendants' motion, Veale argues
that "the defendants" have had contacts with his neighbor,
Lloyd Newhall, who reportedly lives in Williamsville, Vermont.

--------

    [2]  Veale also names federal, state and municipal
officials, attorneys and other individuals as parties who may
be added to his complaint "at a later date." (Paper 4 at 2).

(Paper 36 at 4).  Veale's opposition does not specify which defendants have contacted Newhall, and provides no detail as to the nature of those contacts.  Veale also claims that several other persons, including "former officials from the Towns of Marlborough and Gilsum, NH and at least two former Surveyors involved, in addition to the immediate abutters of the Bennington property . . . now reside in Vermont."  Id. These persons, however, are not currently parties in this case.  In the absence of a *prima facie* showing that the named State Defendants have had "minimum contacts" with Vermont, due process prevents this Court from asserting personal jurisdiction over them.

Even if the Court were to find such minimum contacts, jurisdiction in Vermont would not be proper.  "Assuming jurisdiction over a defendant must also be reasonable under a case's particular circumstances, so that forcing participation in the suit does not offend 'traditional notions of fair play and substantial justice.'"  Real Good Toys, Inc. v. XL Machine Ltd., 163 F. Supp. 2d 421, 424 (D. Vt. 2001) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  When determining whether jurisdiction is reasonable, a court may "evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most

10

efficient resolution of controversies,' and the 'shared
interest of the several States in furthering substantive
social policies.'" Burger King, 417 U.S. at 477 (quoting
World-Wide Volkswagen Corp., 444 U.S. at 292).

Veale's case involves New Hampshire actors and a New
Hampshire property.  Consequently, Vermont's interest in
adjudicating this dispute is minimal, and requiring the
defendants to come to Vermont to litigate would place an
unnecessary burden upon them.  Veale complains that the New
Hampshire courts have been unfair, and that after years of
litigation the boundary dispute remains unresolved.  It is
apparent from Veale's filings that the boundary issue has been
brought to the attention of courts in New Hampshire, and that
he is unhappy with the results to date.  Whether Veale has
exhausted all avenues for appeal, particularly in state court,
is not clear.  Nonetheless, this Court will not review the
decisions of the New Hampshire courts, as Vermont has little
interest in the matter, and it is in the best interests of the
judicial system for this Court not to interfere with either
past or pending cases in a sister state.  Cf. Younger v.
Harris, 401 U.S. 37, 46 (1971); Schlagler v. Phillips, 166
F.3d 439, 442 (2d Cir. 1999).

When the State Defendants engaged in their alleged
misconduct, they could not have reasonably anticipated that
they might face a lawsuit in Vermont.  All of the alleged

11

wrongdoing was conducted by persons or entities from New Hampshire, and all relevant events took place New Hampshire. Vermont's sole claim to this case is that the plaintiff has lived here for less than two years. Accordingly, to assert personal jurisdiction over the defendants in this case would not only violate due process, but would also violate "traditional notions of fair play and substantial justice." The State Defendants' motion to dismiss for lack of personal jurisdiction is, therefore, GRANTED.[3]

III.  Federal Defendants' Motion to Dismiss

The Federal Defendants have moved for dismissal, focusing primarily on the fact that Veale's claims were raised, and dismissed, in previous litigation. As discussed above, Veale's complaint alleges that the Federal Defendants were made aware of a conspiracy among state, municipal and private actors but "den[ied] him access to the courts by a jury trial for redress in any case, and to a proper investigation and prosecution of these crimes." (Paper 4 at 2). By allegedly denying Veale his rights, the Federal Defendants "perpetrated,

---

[3]  Veale has moved for a default judgment against the State Defendants, claiming that their responsive pleading was untimely. (Paper 16). Because the State Defendants are dismissed for lack of personal jurisdiction, the Court cannot enter a default judgment against them. See Domond v. Great Am. Recreation, Inc., 116 F. Supp. 2d 368, 375 (E.D.N.Y. 2000) ("a default judgment against a party over whom a court lacks personal jurisdiction is void"); Popper v. Podhragy, 48 F. Supp. 2d 268, 271 (S.D.N.Y. 1998). The motion for a default judgment (Paper 16) is DENIED.

instigated, and condoned . . . events leading up to" the events that transpired with respect to the property in Bennington, New Hampshire.  Id.

Veale brings his claims in five Counts.  Count 1 alleges constitutional violations amounting to a conspiracy.  Count 2 alleges intentional torts, including theft, trespass, false imprisonment and abuse of office.  Counts 1 and 2 name the defendants generally, but do not identify any Federal Defendant specifically.  Count 3 is a claim of negligence, and appears to pertain primarily to "agents and employees of the defendants, State of New Hampshire, County of Hillsborough, and town of Bennington, NH."  Id. at 10.  Count 4 alleges violations of the New Hampshire Constitution, and again does not specify any Federal Defendant.  Count 5 is brought pursuant to the Federal Tort Claims Act ("FTCA"), and cites the duties and responsibilities "owed to the plaintiff through the years . . . ."

Nearly identical claims were raised by Veale and his brother in prior litigation in the United States District Court for the District of New Hampshire.  Veale, 1999 WL 814334, at *2.  In that case, the New Hampshire court dismissed all claims with prejudice.  Id. at *5.  On the conspiracy issue, the court held that the claims had been litigated previously, had not been pled with the requisite degree of specificity, and were otherwise meritless.  Id. at

13

*3. With respect to the Veales' claim that officials had failed to either investigate or prosecute, the court concluded that "[p]laintiffs simply have no cognizable or enforceable right to an investigation or prosecution of others . . . ." Id. (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973); Leeke v. Timmerman, 454 U.S. 83, 86-87 (1982); Nieves-Ramos v. Gonzalez-De-Rodriguez, 737 F. Supp. 727, 728 (D.P.R. 1990)). The court also noted that one of the many reasons for dismissal was the Veales' failure to exhaust under the FTCA. Id. at *1. The court's order of dismissal with prejudice was affirmed by the First Circuit. Veale v. United States, 230 F.3d 1347 (1st Cir. 2000) (unpublished table decision), cert. denied, 532 U.S. 1049 (2001).

Under the doctrine of res judicata, or claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)); see also Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997) ("[O]nce a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning 'the transaction, or series of connected transactions, out of which the [first] action arose.'" (quoting Restatement (Second) of Judgments § 24(1) (1982))). "Whether or not the first

14

judgment will have preclusive effect depends in part on whether the same transaction or series of transactions is at issue . . . ."  In re Teltronics Servs., Inc., 762 F.2d 185, 190 (2d Cir. 1985).

The related doctrine of collateral estoppel, or issue preclusion, precludes a party from re-litigating an issue of law or fact that has already been decided in a prior proceeding.  Boguslavsky v. Kaplan, 159 F.3d 715, 719-20 (2d Cir. 1998).  Under federal law,[4] a party is collaterally estopped from re-litigating an issue if: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.  Id. (citations and internal quotations omitted).  Id.  "The related doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) are meant to protect parties from having to relitigate identical claims or issues

---

[4]  Federal law governs the preclusive effect of a prior federal question judgment.  See Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 41-42 (2d Cir. 1986), cert. denied, 480 U.S. 948 (1987).  Veale's claims against the Federal Defendants, alleging conspiracy, constitutional violations, and FTCA exhaustion, all present federal questions.  Alleged violations of the New Hampshire Constitution do not appear to include the Federal Defendants.  Assuming, arguendo, that the state constitutional claims do include the Federal Defendants, the Court is declining jurisdiction over these claims as set forth below.

and to promote judicial economy." <u>Transaero, Inc. v. Law</u>
<u>Fuerza Aerea Boliviana</u>, 162 F.3d 724, 731 (2d Cir. 1998).

In this case, both res judicata and collateral estoppel
apply.  In his prior litigation, Veale raised factual claims
concerning the Bennington, New Hampshire property, and his
legal theories were substantially the same as those presented
here.  Indeed, while Veale's complaint consists of many new
facts pertaining to the State Defendants, few new facts have
been alleged against the Federal Defendants.  Veale's primary
claim in his previous litigation was that the Federal
Defendants failed to take action on his behalf, and that
remains his primary claim here.

Res judicata applies because the same causes of action
either were or could have been raised in the prior case.  The
New Hampshire court dismissed Veale's claims of conspiracy and
failure to investigate/prosecute, and these rulings have
preclusive effect here.  To the extent that Veale's claims
against the Federal Defendants are based upon events that have
occurred since the New Hampshire court's ruling in 1999, those
events are part of the same "core of operative facts" and will
not bar the application of res judicata.  <u>See</u> <u>Norman v.</u>
<u>Niagara Mohawk Power Corp.</u>, 873 F.2d 634, 638 (2d Cir. 1989);
<u>Yaba v. Roosevelt</u>, 961 F. Supp. 611, 622 (S.D.N.Y. 1997)
(additional incidents are part of same alleged pattern of
conduct).

16

As the Federal Defendants properly note, Count II of the
instant complaint contains an arguably new intentional torts
theory.  These torts, however, consist of the same alleged
misconduct, such as false imprisonment and abuse of process,
alleged in Veale's previous complaint.  (Paper 27-6 at 12).
Furthermore, Veale concedes that his tort claims against the
Federal Defendants are identical to the ones filed in New
Hampshire.  (Paper 34 at 11).  The claims are, therefore,
precluded.

With respect to his FTCA claims, Veale argues that
dismissal cannot have been with prejudice because he had not
yet exhausted his administrative remedies.  The Second
Circuit, however, has held that a claim can be barred by res
judicata even though the first dismissal was for failure to
exhaust.  Woods v. Dunlop Tire Corp., 972 F.2d 36, 40 (2d Cir.
1992).  In Woods, the court held that dismissal was
appropriate because the plaintiff could have either sought a
stay in her first case while the EEOC investigated her
administrative complaint, or she could have sought a right to
sue letter and amended her complaint when the letter was
issued.  Id. at 41.  Here, Veale could have either sought a
stay while exhausting FTCA remedies, or he could have amended

17

his complaint once exhaustion was complete.  His FTCA claim
is, therefore, barred.[5]

Collateral estoppel applies in this case as well, since
the issues presented with respect to the Federal Defendants
are fundamentally the same as those presented in his prior
case.  Specifically, the issues of conspiracy and failure to
investigate/prosecute were central in the federal litigation
in New Hampshire, and are central here.  Accordingly, the
record before the Court shows that these issues were raised in
a previous proceeding, litigated in the previous proceeding,
that Veale had a full and fair opportunity to litigate his
claims, and that the resolution of these issues was necessary
to support a valid and final judgment on the merits.
Boguslavsky, 159 F.3d at 719-20.  In the end, the New
Hampshire court found that Veale's conspiracy claims were
lacking and that he had no right to either federal
investigations or federal prosecutions, Veale, 1999 WL 814334,
at *3.  Dismissal of those issues precludes Veale's efforts to
bring them now.[6]

---

[5]  As discussed below, Veale's FTCA claims are also
barred for lack of subject matter jurisdiction.

[6]  Although Veale claims that he was denied a jury trial
in federal court, he has not made the judge or any court
officers a party in this case.  Even if Veale were to sue
Judge McAuliffe, Veale's claim would be barred by absolute
judicial immunity.  See Mireles v. Waco, 502 U.S. 9, 12 (1991)
(per curiam); Huminski v. Corsones, 396 F.3d 53, 75 (2d Cir.
2005).

In addition to claim and issue preclusion, there are
other grounds supporting dismissal of Veale's claims.  Veale
states that his claims are brought "pursuant to 18 U.S.C.S.
241, 242, 28 U.S.C.S. 171, and 42 U.S.C.S. 1983, 1985(3), and
1986, and the substantive laws of the State of New Hampshire
and Vermont . . . ."  (Paper 4 at 2).  None of these claims
can provide Veale with relief against the Federal Defendants.
Title 18, Sections 241 and 242 are criminal statutes, and as
such do not provide private causes of action.  See Robinson v.
Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir.
1994).  Similarly, the Court can find no support for a private
cause of action under 28 U.S.C. § 171, which governs the
appointment of judges to the United States Court of Claims.
Title 42 U.S.C. §§ 1983 and 1985 do not apply to the federal
government.  Kingsley v. Bureau of Prisons, 937 F.2d 26, 30
n.4 (2d Cir. 1991) (§ 1983); Harrison v. Potter, 323 F. Supp.
2d 593, 604 (S.D.N.Y. 2004) (§ 1983 and § 1985 "do not provide
a remedy against the federal government").[7]  A conspiracy
claim under 42 U.S.C. § 1986 must be alleged with specificity,
and as the New Hampshire court held previously, Veale's

---

[7]    Because Veale has failed to name individual federal
actors, Bivens v. Six Unknown Named Agents of Federal Bureau
of Narcotics, 403 U.S. 388 (1971) is inapplicable.  Even if
Bivens did apply, the statute of limitations for a
Bivens claim in Vermont is three years, and Veale has not
alleged any specific acts by Federal Defendants within the
three-year period prior to the filing of the complaint.  See
MacCaffray v. United States, 1998 WL 560047, at *4 (D. Vt.
Aug. 27, 1998).

complaint consists of "broad conclusory statements" and
therefore fails to meet this requirement. <u>Veale</u>, 1999 WL
814334, at *3. Finally, having determined that Veale's
federal allegations must be dismissed, the Court will not
exercise supplemental jurisdiction over his state law claims.
<u>See</u> 28 U.S.C. § 1367.

The Federal Defendants also argue that Veale's FTCA
claims are barred for a number of reasons. First, his claims
against the Federal Defendants appear to consist of both
constitutional and tort violations. To the extent that he is
claiming constitutional violations, those claims are not
cognizable under the FTCA. <u>See</u> <u>Chen v. United States</u>, 854
F.2d 622, 625-26 (2d Cir. 1988). Second, the Federal
Defendants argue that Veale has failed to comply with the
FTCA's jurisdictional requirements. If Veale is seeking to
bring new claims against federal court officials, his claims
were never presented to the Administrative Office of the
United States Courts, and are therefore unexhausted. (Paper
26, Dec. of John Chastain). Furthermore, the FTCA notice
submitted by the Veales in October 1999, pertains to their
property in Marlborough, New Hampshire, and not the Bennington
property. (Paper 27-2 at 2).

While this Court could allow Veale an opportunity to
amend his complaint to name new defendants, add legal
theories, or request a stay while he exhausts the FTCA

process, the Court will not do so in light of the nature of his claims and the preclusive effects of prior litigation. See Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003) (leave to amend may be denied when amendment would be futile). Accordingly all claims against the Federal Defendants are hereby DISMISSED with prejudice.

### Conclusion

For the reasons set forth above, the defendants' motions to dismiss (Papers 24 and 32) are GRANTED. Veale's motion for default judgment (Paper 16) is DENIED, his motion for summary judgment (Paper 18) is DENIED as moot, and this case is DISMISSED.

It is further ORDERED that Veale must request leave of the Court before filing any further complaints in this Court.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 24th day of February, 2006.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge

21

# EXHIBIT E

**First Circuit Court of Appeals
Decision Affirming the District Court's
September 1, 1999 Order**

**[NOT FOR PUBLICATION—NOT TO BE CITED AS PRECEDENT]**

# United States Court of Appeals
## For the First Circuit

---

No. 99-2209

SCOTT W. VEALE; DAVID T. VEALE,

Plaintiffs, Appellants,

v.

UNITED STATES OF AMERICA, ET AL.,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

---

Before

Selya, Circuit Judge,
Campbell, Senior Circuit Judge,
and Boudin, Circuit Judge.

---

Scott W. Veale and David T. Veale on brief pro se.
Philip T. McLaughlin, Attorney General, and Daniel J. Mullen,
Senior Assistant Attorney General, on brief for State defendants.
David P. Slawsky and Upton, Sanders & Smith on brief for the
Marlborough defendants.
Paul M. Gagnon, United States Attorney, and T. David Plourde,
Assistant U.S. Attorney, on brief for Federal defendants.

---

October 5, 2000

---

**Per Curiam**. The district court dismissed the amended complaint of appellants Scott W. Veale and David T. Veale, and appellants appealed. After carefully reviewing the record and the parties' briefs, we affirm this judgment for essentially the reasons stated in the district court's Order, dated September 1, 1999. We add only that there was no error in the district court's denial of appellants' motion for a change of venue.

**Affirmed**. **See** Local Rule 27(c).

-2-